727 F.2d 240
 4 Soc.Sec.Rep.Ser. 140, Medicare&Medicaid Gu 33,594
NEW YORK STATE ASSOCIATION FOR RETARDED CHILDREN, INC., et
al., and Patricia Parisi, et al., Plaintiffs,
v.
Hugh L. CAREY, as Governor of the State of New York, et al.,
Defendants-Appellees,
and
United Cerebral Palsy Associations of New York State, Inc.,
Defendant-Appellant.
 No. 456, Docket 83-7335.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 21, 1983.
Decided Jan. 31, 1984.
 
 Frederick K. Mehlman, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen. of the State of N.Y., Melvyn R. Leventhal, Deputy First Asst. Atty. Gen., New York City, of counsel), for defendants-appellees.
 Stephen L. Ratner, New York City (Rosenman Colin Freund Lewis & Cohen, New York City, Peter F. Nadel, Daniel R. Benson, Glenn Rickles, New York City, of counsel), for defendant-appellant.
 Before LUMBARD, MANSFIELD and KEARSE, Circuit Judges.
 LUMBARD, Circuit Judge:
 
 
 1
 The United Cerebral Palsy Associations of New York State, Inc. (UCP) appeals from an order of the Eastern District of New York, Bartels, J., denying its motion for an injunction directing the State of New York ("the State") to reimburse it for expenditures made since July 1, 1982, in operating centers for the disabled in excess of the Medicaid reimbursement rates set by the State, and to set prospective reimbursement rates at a level sufficient to cover UCP's cost of operations.
 
 
 2
 We agree with Judge Bartels that UCP's becoming a party defendant after the 1975 consent decree approved by Judge Bartels, and acting as the State's agent to supply services mandated by the decree, gave UCP no rights under the consent decree to be paid for those services. Thus, UCP's only rights against the State arise under its contract with the State to act as the State's agent in providing services mandated by the consent judgment. Judge Bartels therefore correctly denied UCP's demand for retroactive reimbursement as barred by the Eleventh Amendment, and abstained from setting prospective Medicaid reimbursement rates, in deference to available state remedies. We affirm.
 
 I.
 
 3
 In March, 1972, this class action was brought under 42 U.S.C. Sec. 1983 by the residents of the Willowbrook Developmental Center, now known as the Staten Island Developmental Center, a State-operated institution for the mentally retarded, alleging that they were forced to endure inhuman conditions in violation of their constitutional rights. On April 30, 1975, the claims were resolved when the then parties to the action signed the Willowbrook Consent Judgment which contained detailed "steps, standards and procedures"[1] that New York State must follow in caring for class members, and required the State to "take all steps necessary to ensure the full and timely financing" necessary to carry out those responsibilities. In addition, the judgment expressly provides that the district court retains jurisdiction "for the purpose of enabling any party to apply at any time ... for such further orders as may be necessary or appropriate for the construction of, implementation of, or enforcement of compliance with this judgment or any of the provisions thereof."
 
 
 4
 UCP was not a party to this action when the consent judgment was signed. It first became involved in June, 1975, when the State requested UCP to assist it in carrying out its responsibilities by providing direct care to 50 of the most severely disabled members of the plaintiff class at the Nina Eaton Center on Staten Island. In November, 1976, plaintiffs moved to have the State held in contempt for failure to comply with the consent judgment. They were impressed with UCP's performance, and suggested that UCP take over some of the operations at Willowbrook. The State and UCP accepted the proposal, and pursuant to a Stipulation and Order entered on March 10, 1977, UCP assumed full operational authority of the seven-building Karl Warner complex at Willowbrook.
 
 
 5
 The authority to operate both the Eaton and Warner Centers as the State's agent was delegated to UCP pursuant to contracts between the State and UCP in the form of revocable permits. Those permits require UCP to comply with the "steps, standards, and procedures" set out in the consent judgment. In addition, on April 26, 1978, the parties to the action and UCP stipulated that UCP would be added as a party defendant "for the sole purpose of the carrying out of the ... Consent Judgment," and that UCP would adhere to the terms of the judgment "insofar as the same are relevant and applicable to [UCP] and the operation of said buildings by [UCP]." This Stipulation was entered as an Order on June 29, 1978.
 
 
 6
 Currently, UCP operates residential and day services for approximately 700 class members. Of those, about 300 live at the Warner Center, 50 at Eaton Center and 250 in over 60 apartments and group homes located throughout New York City.
 
 
 7
 Shortly after it began providing services in 1975, UCP challenged the State's reimbursement scheme under Medicaid, 42 U.S.C. Secs. 1396 et seq. In July, 1982, UCP and the State entered into an agreement resolving all claims regarding UCP services provided until July 1, 1982, and stating that they would begin work to devise new Medicaid rates, to be applied retroactive to July 1, 1982. In the interim, UCP agreed to continue its operations and be paid an "interim rate." To date, no new Medicaid rates have been finally set, and UCP now claims that its funding since July 1, 1982, under the interim rate has been so inadequate that it has been able to continue operating only by accruing debts of over 5 million dollars, including a bank loan of 1 million dollars, and by cutting back on staff. Thus, on March 15, 1983, it notified the State that, pursuant to its revocable permits, it would discontinue service in 90 days. UCP then moved in the district court for an injunction directing the State to pay the difference between the amount UCP has spent and the amount it has been reimbursed since July 1, 1982, and to set higher prospective Medicaid reimbursement rates for future services. UCP has indicated that it would withdraw its 90 day notice if its financial problems were resolved. On March 24, 1983, its motion was denied, and this appeal followed.
 
 II.
 
 8
 We turn first to UCP's claim for reimbursement of the difference between the interim reimbursement of the difference between the interim reimbursement fixed by the State and the amounts actually spent by UCP since July 1, 1982. We agree with the district court that this claim amounts to a suit against the State for past debts, and is thus barred by the Eleventh Amendment since the State never consented to be sued by UCP in federal court. Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).
 
 
 9
 UCP contends that the Eleventh Amendment does not apply to this case for two reasons. First, it argues it is not seeking retroactive monetary relief but rather to force the State to comply with the consent judgment. Second, it claims the State has waived its immunity.
 
 
 10
 In Edelman, the Supreme Court specifically stated that although the Eleventh Amendment generally bars suits by "private parties seeking to impose a liability which must be paid from public funds in the state treasury,"[2] 415 U.S. at 663, 94 S.Ct. at 1355, it does not bar suits where "the fiscal consequences to state treasuries ... [are] the necessary result of compliance with decrees which by their terms were prospective in nature." 415 U.S. at 667-68, 94 S.Ct. at 1357-58. Were it otherwise, federal courts would be unable to enforce prospective decrees, rendering those decrees advisory opinions. See New York State Association for Retarded Children, Inc. v. Carey, 596 F.2d 27, 39 (2d Cir.), cert. denied, 444 U.S. 836, 100 S.Ct. 70, 62 L.Ed.2d 46 (1979); Vecchione v. Wohlgemuth, 558 F.2d 150, 158 (3d Cir.), cert. denied, 434 U.S. 943, 98 S.Ct. 439, 54 L.Ed.2d 304 (1977). UCP argues that when it was added as a party defendant in June 1978, the State became obligated, under its pre-existing duty to provide "full and timely financing" for services for the plaintiff class, to pay UCP for its services. Thus, it argues that the State's failure fully to reimburse UCP violates the consent judgment. Since, under the terms of the judgment, any party may apply at any time for an order necessary to ensure compliance with the judgment, UCP argues it was properly before the district court.
 
 
 11
 We disagree. The language allowing parties to seek enforcement orders merely retained jurisdiction in the district court so that parties could press their rights under the consent judgment. The consent judgment's provision requiring the State to ensure the full and timely financing of its obligation to provide services, however, was intended solely for the benefit of the class, not UCP. UCP was added as a party defendant in June, 1978, for a limited purpose: to ensure that the State, as principal, with UCP acting as its agent, would continue to fulfill its obligations to render mandated services. The Order adding UCP as a party defendant stated UCP's party status in a limited fashion:
 
 
 12
 [T]he terms and provisions of the said Consent Judgment ... shall be adhered to by defendant UCPNYS, insofar as the same are relevant and applicable to UCPNYS and the operation of the said buildings by UCPNYS ....
 
 
 13
 Thus, UCP's status as a party defendant applies only insofar as it is the State's agent. The fact that it must, while acting as the State's agent, provide the specific services outlined in the consent judgment, however, does not give it the right under the judgment to be paid for those services. That right comes from its contract with the State.
 
 
 14
 Since UCP has no independent right under the consent judgment to be paid for its services, it has no standing to appear as a party "enforcing" that right. It appears as a health care provider seeking retroactive monetary relief under its contract with the State. Thus, we agree with the district court that UCP's agency relationship with the State does not, of itself, bring its claim within the exception to the Eleventh Amendment allowing suits seeking state compliance with prospective decrees.
 
 
 15
 Nor are we persuaded by UCP's argument that even if the Eleventh Amendment is otherwise applicable, the State has waived its immunity by agreeing in the consent judgment to provide full and timely financing for services to the plaintiff class, or by subsequently accepting the appointment of a special master to monitor future compliance with its obligations under the consent judgment, New York State Association for Retarded Children, Inc. v. Carey, 551 F.Supp. 1165, 1178 (E.D.N.Y.1982), aff'd in part and rev'd in part, 706 F.2d 956 (2d Cir.1983). The State may waive its immunity only by "the most express language" or "overwhelming implications from the text," Edelman v. Jordan, supra, 415 U.S. at 673, 94 S.Ct. at 1360 (quoting Murray v. Wilson Distilling Co., 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)), and we agree with the district court that the State's acquiescence to the federal court's authority in other aspects of this case does not satisfy that requirement.[3]
 
 
 16
 Vecchione v. Wohlgemuth, 558 F.2d 150 (3d Cir.), cert. denied, 434 U.S. 943, 98 S.Ct. 439, 54 L.Ed.2d 304 (1977), on which UCP principally relies, is not to the contrary. In that case, judgment was entered prohibiting Pennsylvania from summarily seizing mental patients' property and applying portions of that property to pay for the costs of their care. The Third Circuit held that Pennsylvania could not subsequently seize those patients' social security checks and then plead Eleventh Amendment immunity to avoid repaying the misappropriated funds. We find Vecchione inapposite. In Vecchione, Pennsylvania clearly violated the terms of the judgment, and was sued by the class of plaintiffs to whom it owed a duty. Here, the State owes a duty under the consent judgment to the plaintiff class to provide financing for their care, and is subject to suit by them should that duty be breached. But plaintiffs are not before us alleging any breach of the consent judgment by the State.[4] They have been receiving quality care, albeit partially at the expense of UCP. But while the State may have violated the spirit of the consent judgment by standing idly by as UCP continued to fulfill the State's obligations only by accruing substantial debts, it has not failed to comply with its literal terms.
 
 
 17
 We therefore agree with the district court that UCP's claim for monetary relief from the State is barred by the Eleventh Amendment, and must be brought in the New York State Court of Claims.
 
 III.
 
 18
 We turn next to UCP's request that prospective Medicaid rates be established at a level sufficient to cover UCP's costs of caring for class members. The district court concluded that it should abstain from deciding that question, since it would needlessly interfere with New York's administration of its Medicaid system, which has its own procedures for administrative and judicial review of Medicaid rates. We agree.
 
 
 19
 Although the federal government has retained some control over Medicaid regulation, it has left the administration and fiscal responsibilities to the individual states. UCP seeks review of the reimbursement rates it has received not pursuant to any federal statute or the consent judgment, but pursuant to its contract with the State. New York has established a procedure for administrative review of the rate-making process, N.Y.Admin.Code, tit. 14, Sec. 681.12(d), and judicial review of administrative decisions is available in New York Supreme Court under Article 78 of New York Civil Practice Law and Rules. N.Y.Civ.Prac.Law Secs. 7801 et seq. (McKinney 1981).[5] Thus, the principles of comity that compelled abstention in Alabama Public Service Commission v. Southern Railway Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951), and Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), apply to this case, and the district court properly abstained, so that UCP's claims could be decided within New York's system of review. See Grossman v. Axelrod, 466 F.Supp. 770, 779 (S.D.N.Y.1979) (district court abstained to avoid conflict with New York's administration of its Medicaid system), aff'd, 646 F.2d 768 (2d Cir.1981).
 
 
 20
 UCP's arguments challenging the district court's abstention are unpersuasive. First, the district court has not "abdicated its responsibility to enforce the consent judgment." Since UCP's right to be paid is contractual only, enforcement of the consent judgment is not at issue in this action.
 
 
 21
 Second, the district court's ruling is not inconsistent with one of its prior decisions in this case, New York State Association for Retarded Children, Inc. v. Carey, 438 F.Supp. 440 (E.D.N.Y.1977). There, the district court refused to abstain from exercising its jurisdiction where the State sought a declaratory judgment that its delegation of operational authority of the Karl Warner Center to UCP did not violate New York Civil Service Law or the Civil Service Employees Association's rights. As the court noted, the matter before it directly called into question its ability to enforce the consent judgment. 438 F.Supp. at 446-47. The rights of class members are not at issue here; the State has stressed that it is prepared to resume operational control of UCP-operated facilities and continue implementation of the terms of the consent judgment.
 
 
 22
 We appreciate the "great reluctance" with which the district court denied UCP its requested relief. Since it correctly applied the legal principles that control this case, however, we affirm. It would surely serve the public interest if the State and UCP could adjust their differences so that the high quality care which the district court found that UCP has been providing for hundreds of seriously handicapped class members may be continued. Should they fail to do so, however, any claim that the State has failed to comply with its funding responsibilities under the consent judgment must come from the plaintiff class.
 
 
 23
 Affirmed.
 
 
 
 [1]
 The "steps, standards and procedures" are outlined in Appendix A of the consent judgment which runs twenty-nine pages and mandates minimum acceptable ratios of attendants to patients, individual plans of care, and development of community residential placements as substitutes for institutionalized care. See New York State Association for Retarded Children, Inc. v. Carey, 596 F.2d 27, 31 (2d Cir.), cert. denied, 444 U.S. 836, 100 S.Ct. 70, 62 L.Ed.2d 46 (1979)
 
 
 [2]
 UCP is a citizen of New York. The Eleventh Amendment by its own terms does not bar suits against a state by its own citizens, but the Supreme Court has "consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." Edelman v. Jordan, 415 U.S. 651, 662-63, 94 S.Ct. 1347, 1355-56, 39 L.Ed.2d 662 (1974) (citations omitted)
 
 
 [3]
 The only other argument UCP might conceivably have made is that the State waived its Eleventh Amendment immunity by entering into a contract with UCP that provides for reimbursement under the federal Medicaid system. However, that argument too must fail. See Florida Dep't of Health & Rehabilitative Servs. v. Florida Nursing Home Ass'n, 450 U.S. 147, 150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981); Ohio v. Madeline Marie Nursing Homes, 694 F.2d 449, 460 (6th Cir.1982)
 
 
 [4]
 Judge Bartels expressed "grave doubts--due to the State's consistently poor past performance--that the State will be able to provide services to UCP clients anywhere near the quality that UCP is providing today." But any challenge to the State's ability to manage the takeover of facilities and the care of class members must be brought by the plaintiff class
 
 
 [5]
 Indeed, the State's brief informs us that UCP appealed from the rates established for the community residence apartments, and its appeal was pending at the time of its motion in the district court. When final rates are issued for the Nina Eaton and Karl Warner Centers by the State Office of Mental Retardation and Developmental Disabilities, UCP will also have the opportunity to challenge them