**Jack FRIEDMAN, Sidney Greenwald, and the Estate of Sandor Kolitch d/b/a Franklin Nursing Home, Plaintiffs,**

v.

**Cesar PERALES, Commissioner of the State of New York Department of Social Services, and David Axelrod, M.D., Commissioner of New York Department of Health, Defendants (Two Cases).**

**Nos. 82 Civ. 5403, 83 Civ. 1506 (RJW).**

United States District Court, S.D. New York.

Aug. 17, 1987.

Robert Abrams, Atty. Gen., State of N.Y., New York City, for defendants; Marion R. Buchbinder, Asst. Atty. Gen., of counsel.

Marvin Neiman, New York City, for plaintiffs.

ROBERT J. WARD, District Judge.

Plaintiffs Jack Friedman, Sidney Greenwald, and the estate of Sandor Kolitch are the licensed operators of the Franklin Nursing Home ("Franklin"), a 320 bed residential health care facility ("RHCF") located in Flushing, New York. Defendant Cesar Perales is the Commissioner of the State of New York Department of Social Services ("DSS"). Defendant David Axelrod is the Commissioner of the State of New York Department of Health ("DOH"). Plaintiffs originally filed these actions to challenge the rates DSS applied for the years 1979, 1980, and 1981 to reimburse Franklin for the Medicaid patients in its care. In a decision dated August 27, 1985, the Honorable Leo P. Gagliardi, United States District Judge for the Southern District of New York, dismissed all of plaintiffs' claims except that alleging that the real property cost reimbursement rates set under New York's Medicaid plan violated the Medicaid provisions of the Social Security Act. On the basis of additional submissions, defendants have now moved for summary judgment on that remaining claim. Plaintiffs have cross-moved for summary judgment. For the reasons to follow, the Court grants defendants' motion.

## BACKGROUND

The Medicaid program created in Title XIX of the Social Security Act as amended ("SSA" or the "Act"), 42 U.S.C. § 1396 *et seq.,* establishes a scheme whereby the state and federal governments share the cost of medical services to be provided to people with limited incomes and resources. Under the program, the federal government reimburses a portion of payments made by participating states to hospitals and other facilities furnishing medical care to eligible recipients. Participation in the Medicaid program is voluntary, but once a state elects to participate, it must meet federal statutory requirements. *Harris v. McRae,* 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980).

Participating states must designate a single agency to administer or to supervise the administration of the state Medicaid plan. 42 U.S.C. § 1396a(a)(5). The designated agency must formulate a medical assistance plan which meets the guidelines of Title XIX and the regulations promulgated thereunder and submit the plan to the Department of Health and Human Services ("HHS"), the federal agency responsible for administering the Medicaid program, for approval. Once HHS approves the plan, the state becomes eligible for federal matching funds to reimburse portions of the cost of specific types of medical assistance. Thereafter, the responsible state agency may not alter the plan without HHS approval. The Medicaid program obligates states to pay the reasonable costs of qualifying RHCF services.

In New York, DSS is charged with administering the Medicaid program. DSS filed a set of regulations to govern state reimbursement of RHCFs. The Secretary of HHS approved those regulations. Under these regulations, DSS employs a system of prospective reimbursement by which the rates for the current year ("rate year") are based on the costs incurred by the RHCF during an earlier year ("base year"). Fixed costs and operating costs constitute the base year costs.[1] Real prop-

---

**1.** Under New York's methodology, RHCFs are reimbursed during the rate year for only those services for which a cost basis was supplied during the base year. To avoid economic hardship, RHCFs may apply to DOH to revise the reimbursement rate to account for new services

erty costs are included as fixed costs. Allowable operating costs are "trended forward" to adjust for inflation between the base year and the rate year. Fixed costs are not trended forward by any factor. Under the formula, the sum of fixed and operating costs divided by the number of patient days of care provided by the RHCF during the base year determines the *per diem* reimbursement rate the RHCF will receive.

Prior to March 10, 1975, capital cost reimbursements for RHCFs operating under *bona fide*, arms-length, valid and non-cancellable leases included "the total payments required under the lease ... subject to the historical limitations set forth by the commissioner."[2] 10 N.Y.Comp.Codes R. & Regs. § 86–2.21(c)(2). As administered by the DSS, New York's Medicaid plan compensates qualifying RHCFs for actual lease expenses, amortized leasehold improvements and insurance premiums up to the historical limitations which have been set as a specified maximum payment per bed in the facility. DOH established the initial maximum rental rate in 1967 based upon a rental schedule presented to it by the Metropolitan New York Nursing Home Association ("Metropolitan"), an association of proprietary RHCFs located in the New York metropolitan area. Metropolitan represented that the schedule compiled actual transactions within New York City for RHCFs constructed in each of the specified years.[3] Based on these compilations, DOH and Metropolitan negotiated an "appropriate rental value" to reimburse RHCF operators. The 1967 appropriate rental value for RHCFs in New York City was set at $1,200 per bed. For those RHCFs opened between 1968 and March 10, 1975, DOH adjusted the 1967 value of $1,200 per bed to reflect increases for inflation in construction costs. The adjustment rate reflected indices, such as the Dodge reports, which document increases in construction costs. The appropriate rental value determined by DOH for a RHCF remains constant through the term of the lease.

Under regulations which became effective March 10, 1975, DSS reformulated capital cost reimbursement methods to base them on historical cost. *See* 10 N.Y.Comp. Codes R. & Regs. § 86–2.21(e). Historical cost is the actual construction cost of a facility and includes interest on capital indebtedness, amortization of capital indebtedness, return of equity, and return on equity. Reimbursable indebtedness includes the mortgage debt and the cost of capital improvements. All capital costs are subject to audit and only those approved by DOH are reimbursable. Facilities which entered into leases prior to the effective date of the new regulations may elect to be reimbursed under either the new historical cost basis or the old appropriate rental value standard. Few operators have opted for the new methodology.[4]

For RHCFs such as Franklin which opened during the second quarter of 1974, the appropriate rental value was set at $1,950 per bed. The ceiling for Franklin's real property cost reimbursement thus is $624,000. In its 1979 cost report, Franklin stated that during the year it had expended $640,000 in rent under its lease, $7,050 for amortization of leasehold improvements, and $3,577 in property insurance. Franklin's stated costs thus totaled $650,627. DOH allowed Franklin's reported 1979 costs up to the $624,000 ceiling and used

---

added during the rate year when the cost of that new service represents a significant increase in the overall operating cost of the RHCF. 10 N.Y.Comp.Codes R. & Regs. § 86–2.14a(3), (4).

**2.** These "historical limitations," or ceilings, were never formally adopted in a regulation promulgated in accordance with the New York State Administrative Procedure Act. *See Friedman v. Perales*, 616 F.Supp. 1363, 1367 (S.D.N.Y.1985).

**3.** While defendants contend that DOH accepted the Metropolitan schedule as is, plaintiffs maintain that DOH set the ceilings at 80% of the rate requested by industry representatives. If so, the memorandum of understanding reached between DOH and Metropolitan resulted from negotiation and is not strictly based upon a compilation of actual transactions. Franklin first opened in 1974 and therefore was not a party to the 1967 memorandum of understanding between DOH and Metropolitan.

**4.** For instance Franklin would receive $1,436 per bed under § 86–2.21(c) compared with its ceiling of $1,950 per bed under § 86–2.21(e).

that figure as the real property component of Franklin's 1981 reimbursement rate.

Franklin appealed the administrative determination of its reimbursement rate. Specifically, Franklin challenged the limitation of its actual costs to the rental ceiling and contested the inclusion within that amount of the cost of leasehold improvements and insurance. DOH denied Franklin's request for an administrative hearing on its appeal.[5] Franklin then filed suits in this Court challenging defendants' reimbursement decisions regarding (1) disallowed start-up costs, (2) accounting and reporting costs, (3) salary ceilings, (4) real property costs, and (5) moveable equipment cost ceilings. By order dated April 11, 1983, Judge Gagliardi consolidated 82 Civ. 5403 and 83 Civ. 1506. On cross-motions for summary judgment, Judge Gagliardi dismissed all of plaintiffs' claims except that based on real property costs.[6] As to that claim, Judge Gagliardi found that the record before him did not afford a sufficient basis to determine the reasonableness of the rate ceilings within the meaning of the Act and, accordingly, he denied the parties' cross-motions for summary judgment. 616 F.Supp. at 1371. On the basis of further submissions, the parties have renewed the cross-motions for summary judgment on this remaining claim.

## DISCUSSION

Plaintiffs argue that at least as applied to Franklin, DSS's decision to limit capital cost reimbursement to a specified maximum ceiling of $1,950 per bed contravenes the substantive reimbursement standard of the Medicaid provisions of the SSA. Specifically they argue (1) that in formulating an appropriate capital costs rule, defendants must consider Franklin's cost on its own rather than as a class, and (2) that the historical maximum rental values established by DSS irrationally limit actual costs incurred by Franklin and hence are unreasonable within the meaning of the Act. Alternatively, plaintiffs contend that the data provided by defendants in response to discovery requests establish that New York State's capital cost reimbursement rates violate the SSA as applied to the entire class of RHCFs which have entered bona fide, long term, noncancellable leases. Proper consideration of these contentions requires a brief overview of the standard to apply in reviewing state agency action and of the substantive standards governing state reimbursement of providers.

### A. Standards for Summary Judgment.

A court may grant the extraordinary remedy of summary judgment only when it is clear both that no genuine issue of material fact remains to be resolved at trial and that the movant is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. In deciding the motion, the Court is not to resolve disputed issues of fact, but rather, while resolving ambiguities and drawing reasonable inferences against the moving party, to assess whether material factual issues remain for the trier of fact. *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir.1986) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986)), *cert. denied*, — U.S. —, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). While the movant faces a difficult burden to succeed, motions for summary judgment, properly employed,

---

5. Franklin did not appeal the amount of real property cost reimbursement included in the 1980 rates. For the 1978 base year which determined rates for 1980, DSS had disallowed the $29,875 of Franklin's costs which exceeded the $624,000 maximum rental ceiling.

6. Judge Gagliardi held the Eleventh Amendment barred Franklin's claims to the extent they sought reimbursement for previous years. Thus he dismissed plaintiffs' claims concerning base year ceilings on salaries, fees, and moveable equipment since those ceilings had been revised or abolished. Judge Gagliardi also dismissed as moot plaintiffs' claims regarding start-up costs inasmuch as Franklin would not incur them again. He also declined to exercise pendent jurisdiction over state law claims which were not barred by the Eleventh Amendment. Thus the only remaining federal claim concerned reimbursement for capital costs. As to that claim, Judge Gagliardi granted defendants summary judgment on the contention that the different reimbursement rates allowed non-profit RHCFs under New York's Medicaid plan violated the Equal Protection Clause. *Friedman v. Perales*, 616 F.Supp. at 1363.

permit a court to terminate frivolous claims and to concentrate its resources on meritorious litigation. *Knight v. U.S. Fire Insurance Co., supra,* 804 F.2d at 12. The motion then

> is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed.Rule Civ.Proc. 1.... Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

B. Standard of Review.

 "The starting point of the court's analysis must be recognition that the federal law gives each state great latitude in dispensing its available funds." *Dandridge v. Williams,* 397 U.S. 471, 478, 90 S.Ct. 1153, 1158, 25 L.Ed.2d 491 (1970). The same standard of review afforded federal agency action applies to the actions of a state agency administering federal Medicaid funding. *Mississippi Hospital Association, Inc. v. Heckler,* 701 F.2d 511, 516 (5th Cir.1983); *Mary Washington Hospital, Inc. v. Fisher,* 635 F.Supp. 891, 897 (E.D.Va.1985). In reviewing nonadjudicatory federal agency action, a court is limited to deciding whether the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[7] *See Citizens to Preserve Overton Park,*

*Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). A presumption of validity attaches to agency action. The burden of proof rests with the party challenging such action. *Alabama Nursing Home Association v. Harris,* 617 F.2d 388, 393 (5th Cir.1980); *Mazaleski v. Treusdell,* 562 F.2d 701, 717 n. 38 (D.C.Cir. 1977). Thus in an action such as this one premised on claims that a state agency acted in violation of the Act, a federal court need only address whether the administering agency acted arbitrarily or capriciously or in contravention of the SSA; the court is not to rethink or reweigh the political and financial considerations that might have animated the decision to adopt a particular reimbursement scheme. *Mississippi Hospital Association Inc. v. Heckler, supra,* 701 F.2d at 516.

 While states are accorded wide latitude in formulating specific Medicaid plans, a state agency nonetheless acts arbitrarily if it fails to base its decision on the proper consideration of relevant data. *California Hospital Association v. Schweiker,* 559 F.Supp. 110, 117 (C.D.Cal.1982) (court enjoined 6% cap on reimbursement increases because state agency had considered only those factors favorable to the plan), *aff'd without opinion,* 705 F.2d 466 (1983). Under the Act, health care cost considerations are relevant to determining Medicaid reimbursement rates, but the state may not set rates based solely on the basis of budgetary considerations. *Wisconsin Hospital Association v. Reivitz,* 733 F.2d 1226 (7th Cir.1984). If the state agency has considered the relevant data, the reviewing court need only determine whether the rate regulations meet the statutory standard.

---

**7.** Although the Administrative Procedure Act does not by its terms apply to state agency action, the standard of review is identical. *Mary Washington Hospital Inc. v. Fisher,* 635 F.Supp. 891, 897 (E.D.Va.1985). As the statute provides:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the

terms of an agency action. The reviewing court shall—

> (1) compel agency action unlawfully withheld or unreasonably delayed; and
> (2) hold unlawful and set aside agency action, findings and conclusions found to be—
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law....

5 U.S.C. § 706.

### C. Substantive Standards For Medicaid Reimbursement.

The first interpretations of the Medicaid provisions of the Act required states to reimburse RHCFs for the costs they actually incurred. *See Mississippi Hospital Association, Inc. v. Heckler, supra,* 701 F.2d at 515. From the outset, however, Congress recognized limitations inherent in a program dependent in part on state funding. Concerned with rising costs, Congress amended Title XIX in 1972 to encourage states to develop alternative reimbursement schemes. *Id.* Between 1972 and 1980, states were required to determine reimbursement rates "on a reasonable cost-related basis, as determined in accordance with methods approved and verified by the Secretary [of HHS]" (the "reasonable cost standard"). 42 U.S.C. § 1396a(a)(13)(E).

In a further effort to contain rising Medicaid costs and to provide the states greater flexibility in setting reimbursement rates in light of reductions in the portion of Medicaid funding paid by the federal government, Congress passed the Boren Amendment in 1980. The Amendment significantly altered the applicable reimbursement standard by freeing the states from the previous requirement of making individual cost determinations for intermediate and skilled nursing facilities. *See generally* 46 Fed.Reg. 47964–47973 (1981). Under the new standard, which became effective on October 1, 1980, the states are to make payments "through the use of rates (determined in accordance with methods and standards developed by the State).... which the State finds, and makes assurances satisfactory to the Secretary, are *reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities.*"[8] 42 U.S.C. § 1396a(a)(13)(A) (emphasis added); *see Wisconsin Hospital Association v. Reivitz, supra,* 733 F.2d at 1228; *Alabama Nursing Home Association v. Harris, supra,* 617 F.2d at 392. Since plaintiffs challenge the 1980 reimbursement rates, the Court must apply this efficient cost standard in reviewing the actions of the State of New York.

The substantive changes effected by the Boren Amendment prompted a number of states to modify the reimbursement portion of their Medicaid plans accordingly. Although it has occasioned some minor disagreements between courts, the spate of litigation spawned by those changes has greatly illuminated the contours of reimbursement strategies which meet the new standard of reasonable and adequate for efficiently and economically operated facilities.

■ Rates required to meet a standard of reasonableness may fall within a zone of reasonableness. *Wisconsin Hospital Association v. Reivitz, supra,* 733 F.2d at 1233 (citing *Federal Power Commission v. Conway Corp.,* 426 U.S. 271, 96 S.Ct. 1999, 48 L.Ed.2d 626 (1976)). Moreover, as Judge Gagliardi recognized, because the new standard is premised on the costs which would be incurred by an economically and efficiently run facility, the states are free to formulate class-wide reimbursement regulations based on the costs of rational groupings of provider facilities. *Friedman v. Perales, supra,* 616 F.Supp. at 1370; *see Alabama Hospital Association v. Beasley,* 702 F.2d 955, 958–59 (11th Cir. 1983) (upholding rural/urban and bed size classifications); *Massachusetts General Hospital v. Weiner,* 569 F.2d 1156 (1st Cir.1978) (upholding state plan based on average cost per day of all inpatients rather than average daily cost of Medicaid patients); *Wilmac Corp. v. Heckler,* 633 F.Supp. 1000, 1007 (E.D.Pa.1986) (under efficient cost standard only overall rates of reimbursement need be reasonable and adequate); *see also Unicare Health Facilities, Inc. v. Miller,* 481 F.Supp. 496 (N.D. Ill.1979) (classification differences between public and private facilities upheld on reasonable cost basis).

■ Under an efficient cost standard, the states need not reimburse individual

---

**8.** The Omnibus Budget Reconciliation Act applied this new reimbursement standard to hospitals as well as RHCFs.

providers for costs they actually or even reasonably incur. *Wilmac Corp. v. Heckler, supra,* 633 F.Supp. at 1007 (upholding a Pennsylvania moratorium on new construction costs); *Ohio State Pharmaceutical Association v. Creasy,* 587 F.Supp. 698, 709 (S.D.Ohio 1984) (state need not reimburse all providers according to their individual costs). Moreover, as they could have under the previous reasonable cost standard, states may still set benchmark rates for efficient costs by establishing fixed ceilings or caps. *Mary Washington Hospital, Inc. v. Fisher, supra,* 635 F.Supp. 891 (upholding ceilings based on the median operating costs for "peer group" hospitals); *Coalition of Michigan Nursing Homes, Inc. v. Dempsey,* 537 F.Supp. 451 (E.D.Mich.1982) (maximum profit factor set at 80th percentile of variable costs of all providers met efficient cost standard); *California Hospital Association v. Obledo,* 602 F.2d 1357 (9th Cir.1979) (ceilings permissible even under reasonable cost standard). With the foregoing background, the Court turns to plaintiffs' contentions.

### D. New York's Real Property Reimbursement Formula.

As a preliminary matter, the Court would now focus the controversy by disposing of the contentious but singularly unenlightening charges the parties have traded in their papers. Defendants have repeatedly asserted that Franklin is earning an exorbitant rate of return on the approximately $72,000 invested in the physical plant of the facility. As scandalous as that may be, plaintiffs correctly note that the outrage over that circumstance is properly directed at Frabcole Associates, Inc. ("Frabcole"), plaintiffs' landlord, rather than to plaintiffs who, from the submissions before the Court, appear only to lease the facility. The rate of return Franklin's owners are earning on their investment would become relevant to the present action only if Frabcole and plaintiffs had negotiated something other than an arms-length lease. Although DSS's original determination that the lease for Franklin was arms-length would not necessarily preclude this Court

or the State of New York from further investigating its actual nature, it behooves the Attorney General to come forward with the evidence he has, if any, that the lease is something other than it appears. Supposition and innuendo are no substitute for careful, legal, argument founded on credible factual submissions.

Moreover, that the method of reimbursement DSS applied to facilities opened after 1975 would generally pay plaintiffs and the operators of other RHCFs less than the maximum to which they are presently entitled surely supports defendants' position that the maximum rates are legal and reasonable, but that fact alone does not foreclose plaintiffs' recovery. This facile supposition again fails to distinguish that owner/lessors may be distinct from operator/lessees. Under the previous reimbursement system, lessees reasonably anticipated when they negotiated leases with their landlords that they would be reimbursed for lease costs up to the rental ceilings. Without expressing any view as to whether it actually would, the Court notes that frustrating such expectations could ultimately affect the viability and availability of RHCFs and therefore might violate the SSA. Having cleared the extraneous arguments, the Court can turn to the matter at hand.

### 1. Adoption.

■ As set forth above, New York reimburses RHCF for both fixed and operating costs. The fixed costs include real property costs. For the operators of leased facilities, the real property costs actual lease payments, amortized leasehold improvements and insurance premiums up to the historical maximum of an appropriate rental value per bed. As noted above, DSS first established the maximum appropriate rental value rates in 1967 based on negotiations with Metropolitan which were premised on a compilation of actual transactions within New York for RHCFs constructed during the relevant years. Even assuming, as plaintiffs contend, that DOH set the initial maximums at 80% of the compiled average costs, that determination

was based upon actual construction costs and therefore cannot be considered arbitrary. Subsequent adjustments to that initial figure based on construction industry indices would also appear to be rational. Nothing in the Act would require the states to conduct periodic surveys of actual costs to update their reimbursement rates. Plaintiffs' unsubstantiated allegation that the yearly adjustments to the lease ceilings are not related in a consistent manner to actual construction costs but rather were "unilaterally decided by DOH on an *ad hoc* basis," plaintiffs' rule 3(g) statement ¶ 14, fails to set forth any concrete particulars which would raise a relevant factual issue concerning the manner in which DSS adopted or adjusted its initial maximum rental rate reimbursement. *See Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980).

■ The initial appropriate rental values and subsequent revisions established by DSS are entitled to a presumption of validity. Plaintiffs have neither adequately rebutted nor raised relevant factual issues concerning the reasonableness of DSS's actions in setting the appropriate rental values. Accordingly, the Court must assume that DSS acted properly and considered the relevant factors in adopting and subsequently revising the appropriate rental values.[9] *See Mary Washington Hospital, Inc. v. Fisher, supra*, 635 F.Supp. at 897–98.

### 2. As Applied.

Each of plaintiffs' arguments that the maximum appropriate rental value as applied to Franklin violates the substantive provisions of the Act collapses into the simple but nevertheless erroneous contention that Franklin is entitled to be reimbursed in full for the actual, reasonable rental payments it made under its lease and as well for certain insurance premiums and amortized leasehold improvements.[10] Under the efficient cost standard implemented by the Boren Amendment and which applies to the rates at issue, that argument is, quite simply, wrong.

New York is entitled to set and apply class-wide reimbursement rates, including rate ceilings, to rational groupings of RHCFs. That DSS regulations allow the actual costs of individual facilities up to the applicable ceiling in no way obligates the agency to make individualized assessment of or to allow actual costs incurred beyond the ceilings.

Finally, plaintiffs' argument that as applied to the class of RHCFs bound by non-cancellable, arms-length leases the DSS regulations violate the Medicaid provisions fails as well. According to the affidavit of Marvin Nieman, based on the rate computation sheets obtained from defendants through discovery, 75% of the RHCFs in the State of New York operating under

**9.** Plaintiffs' argument that inasmuch as defendants never included the method of arriving at the historical limitations in New York's Medicaid plan, *see* 10 N.Y.Comp.Codes R. & Regs. § 86–2.21(e), they may not now rely on it is equally unavailing. The Secretary of HEW, now HHS, originally approved the regulations upon which DSS relied. Although the parties have offered no evidence on the point, presumably the Secretary also approved subsequent modifications of the reimbursement rates. Since plaintiffs have not sued the Secretary, they cannot argue that the Secretary abused his or her discretion in approving the New York plan or its subsequent modifications. *Cf. Wilmac Corp. v. Heckler*, 633 F.Supp. 1000, 1006–07 (E.D.Pa.1986) (Secretary was within her discretion when she accepted state's representation that the capital cost moratorium on new construction was an insignificant change in the state's plan). Absent any claim against the Secretary, plaintiffs' contention must be that New

York violated applicable state procedures by not promulgating the historical cost limitations as part of the Medicaid plan. So viewed, the argument merely misstates under federal law a state law claim which Judge Gagliardi has already dismissed. 617 F.Supp. 1363.

**10.** The Court strongly questions counsel's unfortunate and misleading reliance on *Regents of the University of California v. Schweiker*, 756 F.2d 1387 (9th Cir.1985), for the argument that a providing facility is entitled to be reimbursed for its reasonable cost and that routine cost ceilings implemented by the state must be subject to a facility's right to demonstrate that the application of the cap would improperly limit a facility to less than its reasonable costs. That case involved the reasonable cost standard which still applies to Medicare payments rather than the efficient cost standard which now applies to Medicaid.

arms-length leases received capital cost reimbursement payments which did not meet their actual capital costs. Defendants have countered with undisputed evidence that at least two operators in the New York metropolitan area in a position similar to plaintiffs' but who negotiated more favorable lease terms are reimbursed for all their capital costs. Even accepting plaintiffs contentions as true, they have at most established only that a gap exists between certain facilities' actual capital costs and the levels of reimbursement paid under New York's Medicaid plan. That discrepancy standing alone does not make out a *per se* violation of the statute. Capital costs are only one component of the total reimbursement, the sum of fixed and operating costs, that RHCFs receive. The efficient cost standard of the Medicaid provisions requires only that RHCFs be reimbursed for the efficient cost of their operation, not that every component of reimbursable cost be compensated at an efficient rate. Although Judge Gagliardi provided them ample opportunity to do so, plaintiffs have not produced any evidence that the shortfall between actual and reimbursed real property costs has forced RHCFs to operate at a loss or at a lower level of profit. Nor, more importantly, have they raised any issue, beyond conjecture, on the ultimate touchstone of whether such a problem, if it in fact exists, is so substantial or so pervasive that the capital cost reimbursement policy will alter the availability of or quality of care to be provided at New York RHCFs. 46 Fed.Reg. 47970; *see Mary Washington Hospital, Inc. v. Fisher, supra,* 635 F.Supp. at 901–904 (Congress added reasonable access constraint to prevent states from lowering reimbursement rates so much that a dangerous number of hospitals might withdraw from the program).

■ In light of the presumption of validity that attaches to state agency action, to avoid summary judgment plaintiffs had to meet the burden of producing some evidence to create a triable issue of fact concerning whether the reimbursement rates provided by New York's Medicaid plan violate the efficient cost standard of the SSA.

Despite the ample opportunity they have had since Judge Gagliardi filed the prior decision in this case, plaintiffs have not met that burden. The evidence adduced in this Court concerns only the capital cost reimbursement component of New York's Medicaid plan, not the overall reimbursement rates. Those figures, standing alone, do not warrant an inference by the Court that the overall reimbursement rates paid under New York's plan might violate the efficient cost standards of the SSA.

## CONCLUSION

Plaintiffs have produced no evidence to create a triable issue of fact as to whether the reimbursement rates of the New York State Medicaid plan are arbitrary or capricious or violate the efficient cost standard of the Medicaid provisions of the Social Security Act. Consequently, in light of the presumption of validity that attaches to state agency action, the Court must grant defendants' motion for summary judgment. Plaintiffs' cross-motion for summary judgment is denied. The consolidated actions hereby are dismissed.

It is so ordered.