23099

ANCO, INC., d/b/a Fairfield Homes, Respondent v. STATE HEALTH AND HUMAN SERVICES FINANCE COMMISSION, an Agency of the State of South Carolina; William T. Putnam, as Chairman of the South Carolina Health and Human Services Finance Commission; Dennis Caldwell, as Executive Director of the South Carolina Health and Human Services Commission, Appellants.

RIKARD NURSING HOMES; Winyah Extended Care Center, Inc.; Service Management, Inc., d/b/a Pinewood Convalescent Center; Berkeley Convalescent Center; Magnolia Manor North; Camphaven Nursing Homes; Clarendon Home, Inc.; Dundee Nursing Home; Greenwood Nursing Homes; Kingstree Nursing Facility, Inc.; Marion County Convalescent Center; Wessex Corporation, d/b/a Oakwood Health Care Center and Tanglewood Health Care; Florence Convalescent Center; Fountain Inn Convalescent Home; Wildwood Health Care Center; Greer Health Care, Inc.; Sentry Care Simpsonville, Inc., and St. George Health Care Center, Inc., Respondents v. STATE HEALTH AND HUMAN SERVICES FINANCE COMMISSION, an Agency of the State of South Carolina; William T. Putnam, as Chairman of the State Health and Human Services Finance Commission; Dennis Caldwell, as Executive Director of the State Health and Human Services Finance Commission, Appellants.

(388 S. E. (2d) 780)

Supreme Court

*Raymond G. Halford, Timothy R. Fincher* and *Richard G. Hepfer,* all of *State Health and Human Services Finance Com'n,* Columbia, *for appellants.*

*Joel W. Collins, Jr.,* and *Mark S. Barrow,* both of *Collins and Lacy,* Columbia, *for respondents.*

Heard April 4, 1989.

Decided Nov. 6, 1989.

TOAL, Justice:

This case involves the implementation of a new reimbursement policy for nursing homes under the Medicaid State Plan. The new policy would limit the lease cost reimbursement to the historical cost of the leasing owner (essentially interest plus depreciation). Under the current policy, the actual lease cost is reimbursed up to a maximum of $7.79 per patient day.

The plaintiffs are nursing homes which lease their facilities. They brought this action requesting injunctive and declaratory relief from the implementation of this policy, claiming that the reduction in reimbursement may force them to default on their long-term leases and go out of business. Judge Cobb, in a non-jury hearing, permanently enjoined the State Health and Human Services Finance Commission (Finance Commission) from implementing this policy. Finance Commission brought this appeal.

## FACTS

The Medicaid program enacted as Title XIX of the Social Security Act, 42 U. S. C. § 1396a, *et seq.*, provides for a federal-state partnership to share the cost of providing medical services to specified individuals. To participate, a state must designate a single state agency to administer the state Medicaid plan. 42 U. S. C. § 1396a(a)(5). The State Health and Human Services Finance Commission, which was created by state statute, S. C. Code Ann. § 44-6-10, *et seq.* (Law Co-op. 1976), is designated as the single state agency in South Carolina.

The single state agency is required to prepare a state Medicaid plan consistent with federal regulations and submit it to the U. S. Department of Health and Human Services for review and approval. The state plan must provide, among other numerous items, for payment to skilled and intermediate care nursing facilities in accordance with methods and standards "which the state finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities." 42 U. S. C. § 1396a(a)(13)(A). This provision is commonly referred to as the Boren Amendment which abolished the "reasonable cost-related basis" standard of reimbursement. The state plan specifies the methodology for calculating reimbursement rates.

The Finance Commission implements the Medicaid program by contracting with qualified providers. Anco and the other nursing homes ("Providers") contract for the provision of nursing home services to Medicaid eligible patients on a per day, per patient rate. Their contracts incorporate by reference federal law and regulations and the state Medicaid plan.

Nursing home providers receive reimbursement for various components of the facility's cost such as nursing services, administrative services and capital costs. For owner operated facilities, capital costs are basically interest and depreciation expense. For leased facilities, the capital costs are lease costs or rent. For all facilities, the capital cost component of the rate is limited to $7.79 per patient day. Therefore, under the current policy, the Providers could be reimbursed up to $7.79 per patient day for lease costs.

The Finance Commission amended the state plan to provide that the amount of capital cost reimbursement for providers who lease facilities will be limited to the historical cost of the owner. Therefore, these providers will not be reimbursed for actual lease costs if they are higher than the capital costs of the owner (depreciation and interest). This reduction in reimbursement would be phased in over a three year period. This policy applies only to lease agreements entered into prior to December 15, 1981. A similar policy already applies to leases entered into after December 15, 1981. The December 15, 1981 date is the effective date of the historical cost limit.

The Providers have long-term lease agreements which were executed prior to December 15, 1981. Most of the agreements were specifically approved by the Department of Social Services (the predecessor of the Finance Commission) and the Department of Health and Environmental Control. Plaintiff providers contend that some of them will not receive adequate reimbursement to continue to operate efficiently and that some may be forced to default on their lease and close their facility.

The Providers consolidated their claims and brought this action. The trial court permanently enjoined the implementation of this policy finding that the policy violates the federal Medicaid statute, deprives the plaintiffs of their property without just compensation, violates the equal protection clause, is arbitrary and capricious, and deprives plaintiffs of their legal rights in violation of 42 U. S. C. § 1983.

## ISSUES

(1) Whether the nursing home providers have standing under 42 U. S. C. § 1983 to contest the proposed reimbursement policy?

(2) Whether the proposed policy violates the federal Medicaid Act and regulations promulgated thereunder?

(3) Whether the proposed policy denies the Providers of equal protection under the law?

(4) Whether the proposed policy constitutes inverse condemnation without just compensation?

(5) Whether the adoption of the policy constitutes arbitrary rulemaking?

## DISCUSSION

### 1. SECTION 1983

The Finance Commission contends that the Providers do not have standing under 42 U. S. C. § 1983[1] to contest the proposed reimbursement policy. We disagree.

While this Court recognizes that other jurisdictions are split on this issue,[2] we are compelled to follow the conclusion reached in *Virginia Hospital Ass'n v. Baliles*, 868 F. (2d) 653 (4th Cir. 1989). There, the Fourth Circuit reasoned that "the language and legislative history of § 1396a(a)(13)(A) [the Boren Amendment] imply a congressional intent to allow providers a right of action against State failure to comply with federal Medicaid requirements." *Id.* at 658.

In this case, the Providers challenged the proposed policy on the grounds that it violates the federal Medicaid Act and regulations promulgated thereunder. We find that they have the right to bring such an action under § 1983.

### 2. VIOLATIONS OF THE BOREN AMENDMENT

The Finance Commission contends the proposed policy did not violate the Medicaid Act, 42 U. S. C. § 1396a(a)(13)(A), or the regulations at 42 C. F. R. § 447.250.00. We agree.

The trial court found that the proposed payment rates violate the Boren Amendment in that they: (A) fail to reimburse the cost of economically and efficiently operated facilities; (B) represent arbitrary cutbacks based solely on budgetary considerations; (C) fail to take into account economic trends and conditions; (D) fail to assume that long-term care facility services will be available to Medicaid

---

[1] Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and loss shall be liable to the person injured in an action at law, suit in equity, or other proper proceeding for redress.

[2] *See, e.g.:* Jurisdictions recognizing that providers have enforceable rights: *Colorado Health Care Ass'n v. Colorado Dept. of Social Services*, 842 F. (2d) 1158 (10th Cir. 1988); *Patchogue Nursing Center v. Bowen*, 797 F. (2d) 1137 (2nd Cir. 1986); *Coos Bay Care Center v. State of Oregon, Dept. of Human Resources*, 803 F. (2d) 1060 (9th Cir. 1986); *Nebraska Health Care Ass'n, Inc. v. Dunning*, 778 F. (2d) 1291 (8th Cir. 1985). Jurisdictions holding that providers may not bring an action under § 1983: *Vantage Healthcare Corp. v. Virginia Board of Medical Assistance Services*, 684 F. Supp. 1329 (E. D. Va. 1988); *Silver v. Baggiano*, 804 F. (2d) 1211 (11th Cir. 1986).

recipients in sufficient amount, duration and scope; and (E) treat as "related party transaction" a transaction which is not in fact a related party transaction as that term is defined by the applicable Medicaid regulations. We now analyze these trial court findings.

### A. Reimbursement for the Cost of Economically and Efficiently Operated Facilities

As noted above, the Boren Amendment requires that a state reimburse providers under rates which are "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities." 42 U. S. C. § 1396a(a)(13)(A).

The issue is whether the proposed policy prohibits efficiently and economically operated facilities from receiving reasonable and adequate reimbursement. The Providers contend that each of them is efficient and economical and, therefore, each is entitled to a reasonable and adequate rate to meet their individual facility costs. The Finance Commission argues that this is not the appropriate analysis to determine whether there is a violation under the Boren Amendment. We agree.

The appropriate analysis to determine if there is a violation is to look to see if the *overall* reimbursement rates are still reasonable and adequate rather than the one specific component that is being challenged. *Colorado*, 842 F. (2d) 1158 (10th Cir. 1988); *Friedman v. Perales*, 668 F. Supp. 216 (S. D. N. Y. 1987) aff'd 841 F. (2d) 47 (2nd Cir. 1988); *Wilmac Corp. v. Heckler*, 633 F. Supp. 1000 (E. D. Pa. 1986). Under the efficient cost standard, states are not required to reimburse individual providers for costs actually or reasonably incurred. *Friedman*, 668 F. Supp. at 223; *Wilmac*, 633 F. Supp. at 1007.

In *Friedman*, the court was confronted with facts similar to the case at bar. There, a residential health care facility was challenging the New York Medicaid Agency's reduction in reimbursement for lease costs. The court granted summary judgment in favor of the state agency. The court rejected the provider's contention that the agency should make an individualized assessment of the providers. The

court also rejected the provider's argument that most of the providers were operating under long-term leases and would not receive adequate capital cost reimbursement under the new policy. The court reasoned that the existence of a gap between actual capital costs and the reimbursement paid does not by itself constitute a *per se* violation of the statute. The overall reimbursement must be considered rather than just one component. Noting that the evidence presented by the plaintiff addressed only the capital cost reimbursement component and not the overall reimbursement rates, the court concluded that "[t]hose figures, standing alone, do not warrant an inference by the Court that the overall reimbursement rates paid under [the State's] plan might violate the efficient cost standards of the [Social Security Act]." Similarly, a review of the record in this case indicates that the evidence presented addressed only the capital cost component rather than the overall reimbursement. Therefore, the evidence does not support a finding that the proposed policy violates the federal law.

### B. Cutbacks Based Solely on Budgetary Considerations

Other jurisdictions have found that reimbursement plans cannot be based solely on budgetary appropriations nor can budgetary constraints excuse a state's failure to conform to the federal "reasonable and adequate" standard. *See e.g., Wisconsin Hospital Association v. Reivitz*, 733 F. (2d) 1226 (7th Cir. 1984); *Friedman*, 668 F. Supp. at 216. This argument has no merit in this case. The record reflects that there has been a surplus of Medicaid appropriations of up to $8 million in the past several years. It does not appear that the reduction in the reimbursement rate for leases would be based solely on budgetary considerations or constraints. In addition, evidence was presented that the impetus for the proposed policy was the desire for the expenditure of more money on patient services than the cost of facilities. The trial court's finding that the reduction in the plaintiff Providers' reimbursement for leases was an arbitrary cutback based solely on budgetary considerations is wholly without support in the record.

## C. Economic Trends, Availability of Services and Related Party Transactions

The trial court found that the proposed policy fails to take into consideration economic trends and the availability of services. Upon review of the record, we find that the Providers failed to prove that these factors were not adequately considered.

The regulations promulgated under the Boren Amendment require the agency to consider the effect of the proposed policy. The record includes testimony by representatives of the agency and other expert witnesses which indicates that the impact of this policy was fully considered by the agency. Assurances concerning these findings were submitted to and accepted by the Health Care Financing Administration.

Furthermore, the Providers did not prove that these factors were not considered. They merely argued that their reimbursement for this one component would be reduced.

In addition, the trial court found that the new policies will treat the leases as related party transactions. A review of the applicable statute and regulations indicates that this term "related party transaction" is not relevant to the issues presented in this case.

### 3. EQUAL PROTECTION

The Finance Commission contends that the proposed reimbursement policy does not deny the Providers equal protection of law. We agree.

Equal protection requires that all persons of the statutory class shall be treated alike under similar circumstances and conditions, both in the privileges conferred and in the liabilities imposed. *Samson v. Greenville Hospital System*, 295 S. C. 359, 368 S. E. (2d) 665 (1988).

The trial court found that the Providers were being denied equal protection because other state agencies were not held to historical costs for rental rates. We find that private nursing homes and state agencies are not similarly situated. Therefore, they may not be considered in the same class so as to be required to receive the same benefits.

In addition, the trial court found that these particular providers were being singled out and treated differently

from other nursing homes. We disagree. In 1981, the state agency decided to use historical costs as the basis for capital cost reimbursement. Because these twenty-six (26) providers had already negotiated long-term leases, they were not made subject to the new policy. They, however, are not guaranteed continued exclusion from this policy when all other providers are subject to this rate of reimbursement. Thus, we find that these particular providers are now being treated equally with other nursing homes.

## 4. INVERSE CONDEMNATION

The Finance Commission argues that the proposed ■ policy would not constitute inverse condemnation. We agree.

The trial court found that the policy would deprive the Providers of their property without just compensation and, therefore, would constitute inverse condemnation of their property rights. The trial court found that some of the Providers may receive less than the maximum amount of profit ($1.75 per patient day) if the proposed policy were implemented. In his order, the trial judge noted that this would constitute inverse condemnation because the Providers are "captives" of the Medicaid program. The trial court reasoned that the Providers are contractually obligated to care for their Medicaid patients until they are relocated; and, that because of the shortage of nursing home beds and the fact that some of these Providers have a large number of Medicaid patients, the Providers were locked into the system.

It appears that the trial court's conclusions are based on the argument that the Providers have a protected property interest in Medicaid reimbursement. Even assuming they have such an interest, which was not fully addressed by either party, it would be limited by the reasonable and adequate standard. As noted by the court in *Wilmac Corp. v. Heckler*, 633 F. Supp. 1000 (E. D. Pa. 1986), "[a]s long as [the provider] continues to receive reasonable and adequate reimbursement, it has not been deprived of its property interest, if any, in Medicaid funds." *Id.* at 1008.

We have already concluded that the Providers failed to prove that the proposed reimbursement policy would violate

the reasonable and adequate standard. Therefore, they have also failed to provide a basis upon which to ground their inverse condemnation argument.

We further note that participation in the Medicaid program is voluntary. As noted by the Eighth Circuit in *Minnesota Ass'n of Health Care Facilities, Inc. v. Minnesota Department of Public Welfare*, 742 F. (2d) 442, 446 (1984), *cert. denied*, 469 U. S. 1215, 105 S. Ct. 1191, 84 L. Ed. (2d) 337 (1985), "[t]his voluntariness forecloses the possibility that the statute could result in an imposed taking of private property which would give rise to the constitutional right of just compensation. . . ."

### 5. RETROACTIVE OR ARBITRARY RULEMAKING

The Finance Commission contends that the lease reimbursement policy is not "retroactive" or arbitrary rulemaking. We agree.

The trial court found that "[t]he proposed policy is retroactive in that it is made applicable to facilities with long-term lease agreements signed and approved by the State prior to 1981." In his order, the trial judge noted that the Finance Commission knew about the Providers' leases, had approved the leases; and, therefore, realized the impact of the proposed policy.

First, we conclude that the reimbursement policy is not retroactive. The policy has only prospective application and will affect only the future payments to the Providers. This policy may be distinguished from retroactive policies which have been enacted to recapture funds already paid to providers. For example, in *Bowen v. Georgetown University Hospital*, ___ U. S. ___, 109 S. Ct. 468, 102 L. Ed. (2d) 493 (1988), the Secretary, in 1981, issued a cost-limit schedule that changed the method for calculating the "wage index" which reduced the amount of reimbursement received by the hospitals. When the rule was invalidated by a federal district court in 1983, the pre-1981 rule was applied. In 1984, the 1981 rule was reissued and applied retroactively. The hospitals were required to return part of the reimbursement they received after the 1981 rule had been invalidated. In effect, it was as if the 1981 rule had never been set aside. *See also, Minnesota Ass'n of Health Care Facilities v. Minnesota*

*Dept. of Public Welfare,* 742 F. (2d) 442 (8th Cir.) *cert. denied* 469 U. S. 1215, 105 S. Ct. 1191, 84 L. Ed. (2d) 337 (1985).

In this case, the proposed policy merely extends the future application of a rule which already applies to the majority of providers. It does not attempt to recapture funds which have been paid to the plaintiff Providers during the past several years when the rule did not apply to them. If the policy mandated the restitution of such funds, then it would be retroactive.

Furthermore, evidence was presented that the original "approval" of the leases only meant that the lease agreement met current Medicaid guidelines and that the Providers had notice that the lease policy was subject to change. Therefore, we find that the proposed policy does not constitute retroactive rulemaking.

We also find that the policy does not constitute arbitrary rulemaking. Substantive due process protects a person from being deprived of life, liberty or property for arbitrary reasons. To withstand a substantive due process analysis, the statute must be rationally related to the accomplishment of a legitimate governmental interest. The evidence indicates that the impetus for adopting the policy was the need to expend more money on patient services rather than the cost of the facilities. The reduction of reimbursement for capital costs would provide more money for patient services and, therefore, is rationally related to a legitimate governmental purpose.

For the reasons discussed above, the lower court is

Reversed.

GREGORY, C. J., and HARWELL, CHANDLER and FINNEY, JJ., concur.