1708

SOUTH CAROLINA ELECTRIC AND GAS COMPANY, Respondent v. Jefferson B. HIX and Larry Schweik, d/b/a Splash Rentals and Sales, Appellants.

(410 S.E. (2d) 582)

Court of Appeals

*S. Jahue Moore*, of *Kirkland, Taylor, Wilson, Moore, Allen & Deneen*, West Columbia, *for appellants.*

*George S. Nicholson* and *Patrick J. Frawley*, both of *Bouknight, Nicholson, Davis, Frawley & Anderson*, Lexington, *for respondent.*

Heard Feb. 20, 1991.

Decided Oct. 14, 1991.

BELL, Judge:

This is an action in equity for an injunction restraining a trespass to land. The landowner, South Carolina Electric &

Gas Company, sought the injunction against Jefferson B. Hix and Larry Schweik, the proprietors of a business known as Splash Rentals and Sales. The circuit court referred the matter to a special referee to enter final judgment with direct appeal to this Court. After a hearing, the referee entered judgment granting the injunction. Splash Rentals appeals. We affirm.

SCE&G owns Lake Murray near Columbia, South Carolina. Lake Murray is a manmade lake formed by an impoundment of the waters of the Saluda River by the Saluda Dam. The waters of the Saluda River and the lake are navigable waters of the State of South Carolina and of the United States. SCE&G uses the lake to generate electricity.

Pursuant to federal statute, the Federal Energy Regulatory Commission has licensed SCE&G to impound the waters of the Saluda River and to operate and maintain the Saluda Project. The Saluda Project includes the dam, the lands and waters within the project boundary owned by SCE&G, a powerhouse, and other facilities. The license requires SCE&G to allow the public free access to the waters of Lake Murray and adjacent lands owned by SCE&G for the purposes of navigation and outdoor recreation.

Hix owns a parcel of land bordering SCE&G's property. He purchased his property in 1984. The property line between SCE&G and Hix is the so-called "360 contour line." The 360 contour line is the maximum pool elevation level of the Lake measured in feet above sea level. The water of Lake Murray rarely reaches the 360 contour line. Consequently, there normally exists a fringe strip of land between the water's edge and SCE&G's property line. This fringe strip varies in width according to the lake level. The 360 contour line is a fixed boundary.

Hix's property is in a residential neighborhood. However, no deed covenants nor zoning restrictions prohibit commercial use of Hix's land. In May, 1985, Hix met with representatives of SCE&G to discuss his plans to operate a commercial watercraft rental business. Apparently, the Company's representatives understood the business would operate from a nearby commercial marina already in existence. Hix, on the other hand, intended to operate the business from his own land, using the marina to refuel his watercraft so he would not need to install fuel pumps on his premises.

Following the meeting with the Company's representatives, Hix applied to the United States Corps of Engineers for a permit to convert his existing dock from residential to commercial use. The Corps issued a notice of intent to approve the application. In the meantime, Hix and Schweik began operating Splash Rentals from Hix's property. They rented pontoon boats to the public, launched the boats from Hix's land and private dock, and stored the boats on Hix's property. In order to gain access to the water, they crossed the fringe strip owned by SCE&G. From time to time they also moored or parked the boats on the fringe strip.

Upon receiving complaints about Splash Rentals from neighboring landowners, SCE&G notified Hix and Schweik they could not use the Company's fringe strip for commercial purposes. SCE&G also filed an objection with the Corps of Engineers opposing the grant of a commercial use permit for Hix's dock. As a result, the Corps has not issued the permit. When Splash Rentals continued to use the fringe strip for its business operations, SCE&G brought this action to enjoin the trespass on its land.

## I.

At common law an owner in peaceable possession of real property has the right to exclude all others from his property. *See Snow v. City of Columbia,* 409 S.E. (2d) 797 (S.C. Ct. App. 1991). One who makes an unwarrantable entry on property in the peaceable possession of another is a trespasser and may be enjoined from continuing to trespass. *See Mack v. Edens,* Op. No. 1698, — S.E. (2d) — (S.C. Ct. App. filed Sept. 23, 1991). Where the property in question is a navigable waterway, the rights of the riparian or littoral owner are not absolute; the use of his property is subject to lawful regulation by public authority. *State ex rel. McLeod v. Sloan Construction Co., Inc.,* 284 S.C. 491, 328 S.E. (2d) 84 (Ct. App. 1985). In the case of navigable waters of the United States, the littoral owner's rights are subject to the paramount public right to free navigation. *United States v. River Rouge Improvement Co.,* 269 U.S. 411, 46 S. Ct. 144, 70 L. Ed. 339 (1926); *Pike Rapids Power Co. v. Minneapolis, St. Paul & Sault St. Marie Railway Co.,* 99 F. (2d) 902 (8th Cir. 1938) *cert. denied,* 306 U.S. 640, 59 S. Ct. 488, 83 L. Ed. 1040 (1939).

Splash Rentals asserts the referee erred in granting the injunction because the fringe strip, although private property, constitutes a navigable waterway subject to the paramount right of the public to free navigation for recreational and commercial purposes.

We assume, without deciding, that the fringe strip owned by SCE&G is part of the lake subject to a public right of navigation. Therefore, members of the public, including adjacent landowners like Hix, may lawfully enter the fringe strip to gain access to the lake. Such a warranted entry is not a trespass. However, this public right of entry is itself subject to reasonable regulation. *State v. T.O.L., Inc.*, 206 So. (2d) 69 (Fla. Dist. Ct. App. 1968).

The license for the Saluda Project allows SCE&G to limit public access to lands and waters within the project boundary when it deems limitations are necessary for the protection of life, health, and property. Moreover, the Company is authorized to cancel permission to use and occupy the waters and adjacent lands owned by it and to require removal of structures and facilities if necessary to protect and enhance the scenic, recreational, or other environmental values of the lake. Acting pursuant to this authority, SCE&G has withdrawn permission for Splash Rentals to use the fringe strip bordering on Hix's land for commercial purposes. Splash Rentals does not challenge the validity of the license or the legal authority of the Federal Energy Regulatory Commission, under the terms of the license, to delegate regulatory powers to SCE&G.

We hold the Company's action was a reasonable and proper exercise of its rights as a proprietor and its authority under the terms of the federal license to regulate the use and occupation of the waters and lands within the Saluda Project. Once the Company refused permission for Splash Rentals to enter and occupy its lands for commercial purposes, any further entry and occupation for commercial purposes constituted a continuing trespass for which an action would lie.

## II.

In the alternative, Splash Rentals argues that SCE&G is estopped to deny it the use of the fringe strip in connection with its business. The argument rests on two points. First, Splash Rentals asserts the Company has granted the public permission to use and occupy the shoreline of Lake Murray since the lake came into existence. The public's access cannot now be restricted after more than fifty years of contrary practice. Second, it argues the Company cannot now object to the boat rental business because the Company's representatives agreed to permit a commercial use on its property during the May, 1985, meeting. Hix relied on the Company's assurances to begin the business, believing he would have free access to the lake for commercial purposes. Only after he invested in and began operating the business did SCE&G indicate any objection to his commercial activities.

The argument that historical public access to the lake raises an estoppel is without merit. The public has never had unlimited free access to the land and water bordering Hix's property. The use of the fringe strip both before and immediately after Hix purchased his property in 1984 was a private, residential use only. There was no prior public or commercial use of the strip bordering Hix's land. SCE&G does not oppose and has not restricted Hix's continued private, noncommercial use of the strip as a means of access to the lake. Thus, there is no factual predicate for claiming an estoppel.

The argument that an estoppel arises from the May, 1985, meeting is also without merit. A party may be precluded by estoppel from asserting a cause of action inconsistent with a position he took prior to litigation, if the adverse party has detrimentally changed his position in reliance thereon. *Harper v. Ethridge*, 290 S.C. 112, 348 S.E. (2d) 374 (Ct. App. 1986). The elements of estoppel are: (1) conduct by the plaintiff calculated to convey the impression that the facts are otherwise than and inconsistent with the position he subsequently asserts in his cause of action; (2) plaintiff's intention or expectation that the defendant will act upon such conduct; (3) plaintiff's knowledge, actual or constructive, of the facts; (4) defendant's lack of knowledge of the facts; (5) defendant's reasonable reliance on plaintiff's prior inconsistent con-

duct; and (6) defendant's detrimental change of position as a result of his reliance. *See Corley v. Looper*, 287 S.C. 618, 340 S.E. (2d) 556 (Ct. App. 1986).

In this case, Splash Rentals has not shown that SCE&G, with accurate knowledge of Hix's plans for the boat rental business, by word or deed conveyed the impression it had no objection to the commercial use and occupation of the fringe strip bordering Hix's property. On the contrary, the record shows a misunderstanding between the parties after the May, 1985, meeting. A letter later sent by Hix's attorney to SCE&G's attorney expressly confirms that a misunderstanding resulted from the meeting. Since Hix knew of the misunderstanding, he could not reasonably rely on his subjective view of what was agreed at the meeting. Because SCE&G did not know the facts at the time and because Hix's asserted reliance on the Company's conduct was not reasonable in the circumstances, no estoppel arises from the May, 1985, meeting.

Affirmed.

GARDNER and SHAW, JJ., concur.