511 S.E.2d 361

**Bob BARNHILL, Individually and d/b/a Bob's Watersports and d/b/a Bob's Bikes, Respondent,**

v.

**CITY OF NORTH MYRTLE BEACH, Appellant.**

No. 24881.

Supreme Court of South Carolina.

Heard Oct. 21, 1998.

Decided Jan. 18, 1999.

---

484

Charles E. Carpenter Jr. and S. Elizabeth Brosnan, both of Richardson, Plowden, Carpenter & Robinson, P.A., of Columbia; and Douglas C. Baxter, of Richardson, Plowden, Carpenter & Robinson, P.A., of Myrtle Beach, for appellant.

Thomas A. Boland, Sr., of Florence; and Howell V. Bellamy, Jr., of Bellamy Law Firm, of Myrtle Beach, for respondent.

MOORE, Justice:

Respondent Barnhill commenced this action challenging in part appellant's (City's) ordinance restricting the launching and beaching of motorized watercraft, including jet skis, on

the public beach. We reverse that portion of the trial court's order finding the ordinance invalid.

## FACTS

In 1992, Respondent Barnhill operated a jet ski rental business near the beach pursuant to a business license issued by City. At the time his license was issued, Ordinance 5–11 required that jet skis be launched or beached only in specified areas of the beach. City subsequently amended Ordinance 5–11 by adding subsection (c) which prohibits launching or beaching jet skis between 9:00 a.m. and 5:00 p.m. from May 15 to September 15 annually with the exception of government or authorized watercraft.

After City began enforcing the new ordinance, Barnhill commenced this declaratory judgment action challenging the ordinance's validity and seeking an injunction against its enforcement. The case was referred to a special referee. The referee found Ordinance 5–11(c) invalid because it exceeded City's police power and was inconsistent with the Constitution and general law of the State. Further, he found the ordinance violated several federal constitutional provisions. City appeals.

## DISCUSSION

### 1. *Police power*

Under S.C.Code Ann. § 5–7–30 (Supp.1997), a municipality may enact:

regulations, resolutions, and ordinances not inconsistent with the Constitution and general law of this State, including the exercise of powers in relation to roads, streets, markets, law enforcement, health, and order in the municipality or respecting any subject which appears to it necessary and proper for the security, general welfare, and convenience of the municipality or for preserving health, peace, order, and good government in it. . . .

Under this section, municipalities enjoy a broad grant of power regarding ordinances that promote safety. *Town of Hilton Head Island v. Fine Liquors, Ltd.*, 302 S.C. 550, 397 S.E.2d 662 (1990). The exercise of a municipality's police

power is valid if it is not arbitrary and has a reasonable relation to a lawful purpose. *Id.* Under S.C.Code Ann. § 5–7–140 (Supp.1997), City's jurisdiction includes the public beach.[1]

The launching and beaching of motorized watercraft are activities that occur on the public beach. Restricting launching and beaching is reasonably related to promoting safety during the summer tourist season when beaches are crowded. Moreover, the restriction is reasonable since it limits motorized watercraft only during hours when the beach is most used by the public for swimming. We find this restriction is within City's police power.

## 2. *State statutes*

■ The referee concluded Ordinance 5–11(c) was inconsistent with statewide statutes in Title 50 that preempt regulation of watercraft on navigable waters. *See* S.C.Code Ann. § 50–21–870 (Supp.1997) (no person may operate or be in possession of a personal watercraft while on the waters of this State after sunset or before sunrise); *see also* § 50–21–820 (Supp.1997) (waterskiing or similar activity not allowed between sunset and sunrise); § 50–21–110 (Supp.1997) (no person may use motorboat, waterskis, or similar device negligently or while intoxicated).

■ While we agree the State has preempted the entire field of regulating watercraft on navigable waters as provided in Title 50, *see* S.C.Code Ann. § 50–21–30 (Supp.1997),[2] we

---

1. Under § 5–7–140, the corporate limits of a municipality bordering the Atlantic Ocean include the area between the high-tide line and one mile seaward. This area is "subject to all the ordinances and regulations that may be applicable to the areas lying within the corporate limits of the municipality".

2. In order to preempt an entire field, an act must make manifest a legislative intent that no other enactment may touch upon the subject in any way. *Fine Liquors*, 397 S.E.2d at 663. Section 50–21–30 provides in pertinent part:

   (1) The provisions of this chapter, and of other applicable laws of this State shall govern the operating, equipment, numbering and all other matters relating thereto whenever any vessel shall be operated **on the waters of this State** or when any activity regulated by this chapter shall take place thereon; but nothing in this chapter shall be construed to prevent the adoption of any ordinance or local law relating to operation and equipment of vessels the provision so which are

find no inconsistency with City's regulation of activity on the public beach.

■ In order for there to be a conflict between a state statute and a municipal ordinance, both must contain either express or implied conditions that are inconsistent and irreconcilable with each other. If either is silent where the other speaks, there is no conflict. *Wright v. Richland County Sch. Dist. Two*, 326 S.C. 271, 486 S.E.2d 740 (1997); *Fine Liquors, supra.*

Here, as provided in § 50–21–30(1),[3] State statutes regulate only activity "on the waters of this State" and are silent regarding activities on the public beaches. Ordinance 5–11(c), which regulates activity on the public beaches, is not irreconcilable with these statutes and therefore is not inconsistent with the general law of this State.

### 3. *State Constitution*

■ The referee found Ordinance 5–11(c) inconsistent with article XIV, § 4, of our State Constitution which provides in pertinent part:

> identical to the provision of this chapter, amendments thereto, or regulations issued thereunder; provided, that such ordinances or local laws shall be operative only so long as and to the extent that they continue to be identical to provisions of this chapter, amendments thereto, or regulations issued thereunder.
>
> (2) Any subdivision of this State may, at any time, but only after three days' public notice make formal application to the department for special rules and regulations with reference to the operation of vessels on any waters within its territorial limits and shall set forth therein the reasons which make such special rules and regulations necessary or appropriate.
>
> (3) The [Department of Natural Resources] is hereby authorized to make special rules and regulations with reference to the operation of vessels on waters within the territorial limits of this State.
>
> (Emphasis added). The plain language of § 50–21–30 manifests a clear legislative intent to preempt the entire field of regulation regarding the use of watercraft on navigable waters. Any local regulation must in fact be identical to State law unless authorized by the Department of Natural Resources under subsection (2). Accordingly, the referee's ruling on preemption is correct.

**3.** *See supra* note 2.

All navigable waters shall forever remain public highways free to the citizens of the State and the United States without tax, impost or toll imposed....

We disagree.

The effect of Ordinance 5–11(c) is to restrict the use of jet skis to approximately six hours per day during the summer months. Since jet skis cannot be operated on the waters of the State between sunset and sunrise under § 50–21–870(B)(2), application of City's ordinance results in allowing jet ski access only from sunrise until 9:00 a.m. and from 5:00 p.m. until sunset.[4]

Although the complete blockage of all use of navigable water is unconstitutional absent an overriding public interest, *State ex rel. Medlock v. South Carolina Coastal Council, supra,* the public's access to navigable water is subject to reasonable regulation. *South Carolina Elec. & Gas Co. v. Hix,* 306 S.C. 173, 410 S.E.2d 582 (Ct.App.1991). We have found no precedent requiring that a restriction on access to navigable water be the least restrictive means of regulating in order to pass muster as reasonable regulation. "Reasonable" in the context of other constitutional challenges has been defined simply as rationally related to a legitimate legislative purpose. *See Anco, Inc. v. State Health and Human Services Fin. Comm'n,* 300 S.C. 432, 388 S.E.2d 780 (1989) (substantive due process); *Jenkins v. Meares,* 302 S.C. 142, 394 S.E.2d 317 (1990) (equal protection). Here, the restriction on jet skis is rationally related to the legitimate goal of public safety.

Further, in *Captain Sandy's Tours, Inc. v. Georgetown County Bldg. Official,* 310 S.C. 206, 423 S.E.2d 99 (1992), we upheld a county ordinance prohibiting the commercial use of public landings. The plaintiff, a commercial tour boat enterprise, claimed the ordinance violated its constitutional right of access to navigable water. We found article XIV, § 4, was not infringed where some access remained.

---

4. Pleasure boating is a protected use of navigable water under article XIV, § 4. *State ex rel. Medlock v. South Carolina Coastal Council,* 289 S.C. 445, 346 S.E.2d 716 (1986); *State v. Columbia Water Power Co.,* 82 S.C. 181, 63 S.E. 884 (1909).

Accordingly, we hold Ordinance 5–11(c) is not inconsistent with article XIV, § 4, because it is a reasonable restriction on public access to navigable water.[5]

### 4. *Taking*

The referee found that because Ordinance 5–11 allowed the launching and beaching of jet skis at the time Barnhill obtained his business license and began operating his rental business, he had a vested right to use the public beach for this purpose and enactment of subsection (c) constituted a regulatory taking. This ruling is erroneous. There is no private vested right in a particular use of government property. *Captain Sandy's, supra (citing State Highway Dept. v. Carodale Assoc.,* 268 S.C. 556, 235 S.E.2d 127 (1977).)

### 5. *Equal protection*

The referee found Ordinance 5–11(c) violated equal protection because it was not enforced as to all motorized watercraft. A law fair on its face may be shown to violate equal protection if it is intentionally enforced discriminatorily. *Butler v. Town of Edgefield,* 328 S.C. 238, 493 S.E.2d 838 (1997). In this case, however, there is no evidence indicating discriminatory enforcement of the ordinance. Accordingly, on this record, we hold the referee erred finding an equal protection violation.

## CONCLUSION

We hold the referee erred in finding Ordinance 5–11(c) invalid. The circuit court's order affirming this ruling is **REVERSED.** City's Argument IV is without merit and the circuit court's judgment on the issue is **AFFIRMED** under Rule 220(b), SCACR. *See City of Abbeville v. Aiken Elec. Co-op., Inc.,* 287 S.C. 361, 338 S.E.2d 831 (1985) (power to franchise is delegated only by statute); *Berkeley Elec. Co-op., Inc. v. Town of Mt. Pleasant,* 308 S.C. 205, 417 S.E.2d 579

---

**5.** The referee also found the ordinance violated the federal constitution's protection of access to navigable water. Federal law applies to activity on navigable water that affects interstate commerce. *State ex rel. Medlock v. Coastal Council, supra.* There is no allegation that the ordinance in question here infringes on interstate commerce.

(1992) (franchise agreement that does not meet statutory requirements is illegal).

**REVERSED IN PART; AFFIRMED IN PART.**

FINNEY, C.J., TOAL, WALLER and BURNETT, JJ., concur.