PORT CHESTER NURSING
HOME, Plaintiff,

v.

David AXELROD, M.D., Commissioner of the New York State Department of Health; Cesar Perales, Commissioner of the State of New York Department of Social Services; R. Wayne Diesel, Budget Director of the State of New York; John J. Allen, Acting Commissioner of the Westchester County Department of Social Services; and William Grinker, Administrator of the New York City Human Resources Administration, and Commissioner of the New York City Department of Social Services, Defendants.

No. 85. Civ. 8407 (RLC).

United States District Court,
S.D. New York.

March 13, 1990.

Marvin Neiman, P.C., New York City (Marvin Neiman, Betsy R. Malik, of counsel), for plaintiff.

Robert Abrams, Atty. Gen. of the State of N.Y., New York City (Darren O'Connor, of counsel), for defendants Axelrod, Perales and Diesel.

**ROBERT L. CARTER, District Judge.**

Plaintiff Port Chester Nursing Home brings this action under Title XIX of Chapter 7 of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.*, Section 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, the equal protection clause of the United States Constitution, the laws of the State of New York, and the New York State Constitution. Defendants are administrative officials of New York State, Westchester County, and New York City.[1] Plaintiff seeks declaratory and injunctive relief determining that certain limitations on its medicaid reimbursement for real property costs violate federal and state law, and requiring the Commissioner of Health of the State of New York to promulgate higher reimbursement rates.[2]

Plaintiff moves pursuant to Rule 15, F.R. Civ.P., to amend its complaint. Defendants oppose plaintiff's motion, and cross-move to dismiss plaintiff's complaint pursuant to Rule 12(b)(6), F.R.Civ.P., and for summary judgment pursuant to Rule 56, F.R.Civ.P.

## I.

In order to understand the instant determination, it is necessary to take a brief look at the joint federal-state system of administering medicaid.

Medicaid is administered by the individual states in accordance with a state-adopted plan that conforms to federal requirements. 42 U.S.C. § 1396a. By participating in the medicaid program, plaintiff is required to provide medical assistance to eligible persons and by doing so is entitled to reimbursement which is "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities ..." (the "efficient cost standard"). 42 U.S.C. § 1396a(a)(13)(A). It is the responsibility of the state plan to determine the methods and amounts of payment to medicaid providers. 42 U.S.C. § 1396a(a)(13)(A); 42 C.F.R. § 447.250 *et seq.* In New York State, the Commissioner of Health determines the reimbursement for residential health care facilities ("RHCFs"), N.Y. Pub. Health Law §§ 2803(2), 2807(3) and 2808(3) (McKinney 1985 & Supp.1990), in accordance with Part 86–2 of Title 10 of the New York Codes, Rules and Regulations ("NYCRR").

Under the NYCRR, a RHCF's reimbursement is broken down into four separate and distinct components: direct costs, indirect costs, non-comparable costs, and capital costs. NYCRR § 86–2.10(b)(1)(ii). The direct, indirect and non-comparable costs are referred to as the operating costs, NYCRR § 86–2.10(b)(2), and are not at issue in this case. Capital costs—basically costs for real property and improvements thereto—are computed by reference to a "base" year, and provide for consideration of facts such as the age, size, location and condition of the facility. The amount and method of capital cost reimbursement also depend upon the form of ownership of the facility. Public and voluntary facilities are reimbursed under one section of the regulations, NYCRR § 86–2.19, and proprietary

---

1. At the time this suit was initiated, defendant David Axelrod was the Commissioner of the State of New York Department of Health; defendant Cesar Perales was the Commissioner of the State of New York Department of Social Services; defendant R. Wayne Diesel was the Budget Director of New York State Division of Budget; defendant John T. Allen was the Acting Commissioner of the Westchester County Department of Social Services; and, defendant William Grinker was the Administrator of the New York City Human Resources Administration and the Commissioner of the New York City Department of Social Services.

2. By stipulation dated February 13, 1986, the parties to this action agreed that it would be placed on the court's suspense calendar pending a decision by Judge Ward in a case which raised similar issues of law. That decision, *Friedman v. Perales,* 668 F.Supp. 216 (S.D.N.Y.1987) (Ward, J.), *aff'd,* 841 F.2d 47 (2d Cir.1988) (*per curiam* ), was issued on August 17, 1987. *See also, Friedman v. Perales,* 616 F.Supp. 1363 (S.D. N.Y.1985) (Gagliardi, J.). This case was removed from the court's suspense calendar in March, 1988.

facilities under another. NYCRR § 86–2.21.[3]

Most public and voluntary RHCFs are reimbursed for their capital costs based on approved historic costs.[4] NYCRR § 86–2.19(a). That is, the RHCFs are reimbursed for the amount of depreciation, generally figured by the straight-line method, that can be taken on buildings, fixed equipment and capital improvements. If the facility is leased, reimbursement is based on the amount of depreciation which can be taken by the landlord. Aff. of W. Gormley, ¶ 6. However, voluntary RHCFs located in space leased from a proprietary interest pursuant to a *bona fide*, valid, non-cancelable lease entered into and approved prior to March 10, 1975, receive reimbursement based on the lease rental, subject to the historical limitations set forth by the Commissioner.[5] NYCRR §§ 86–2.19(e), 2.21(c). *See* Pub. Health Law § 2808(2–a)(c). The historical limitations are figured as a dollar-amount-per-bed based on the year of construction. Facilities operating under leases entered into after March 10, 1975, or in which "the proprietary interest has representation on the board of directors of the voluntary [RHCF]," NYCRR § 86–2.19(e), are not eligible for reimbursement based

on lease rental. NYCRR § 86–2.19(e) was enacted in June, 1977. Aff. of W. Gormley, ¶ 8.

Plaintiff participates in the above described system as a voluntary not-for-profit, skilled, 180–bed nursing facility located in Port Chester, New York. Plaintiff is operated by the National Council of Young Israel ("NCYI"), a charitable organization, and licensed by the State of New York. Approximately 90% of plaintiff's present income comes from services provided to medicaid eligible persons.

Plaintiff has been in operation since December, 1970, originally as a proprietary facility operated by David Wolf. By the end of 1970, approximately 50% of plaintiff's beds were utilized. During the following year, 1971, the remainder of the beds became occupied. NCYI took over the operation of plaintiff in 1976 and, at that time, assumed a valid, bona fide, long-term non-cancellable lease from Wolf, assuming that it would be reimbursed for the actual lease payments which it made.[6] Wolf is a member of the board of directors of NCYI.

Essentially, plaintiff complains of two separate matters. First, plaintiff objects

---

**3.** NYCRR's capital reimbursement provisions also provide for depreciation on movable equipment, NYCRR § 86–2.22, and allow reimbursement for interest on current and capital indebtedness. These sections are not in issue in this case.

**4.** Proprietary RHCFs are also generally reimbursed based on historical costs, although the computation of such reimbursement, a technical matter not in issue here, differs somewhat from voluntary or public RHCFs. NYCRR § 86–2.21(e). As with voluntary RHCFs, proprietary RHCFs located in space leased pursuant to a *bona fide*, valid, non-cancelable lease entered into and approved prior to March 10, 1975, receive reimbursement based on the lease rental, subject to the historical limitations set forth by the Commissioner. NYCRR § 86–2.21(c).

**5.** According to the defendants, a RHCF fitting within the NYCRR § 86–2.19(e) exception may elect to receive reimbursement based on historic costs, but it would invariably generate a lower reimbursement rate.

**6.** Although the court will assume plaintiff's statement to be true for the purposes of this motion, this assertion seems contradicted by the

facts. It appears that the lease assumed by plaintiff had a clause which, after ten years, allowed the Lessor to increase the rental in an amount based on a cost of living index. June 30, 1974, Letter from Rabbi Ephraim H. Sturm to Dr. Frank T. Cicero. Plaintiff knew about this lease provision and represented to the State that "[w]e will gladly sign an agreement stating that five years from now when the cost of living index clause becomes effective, we ... will accept the increase, whatever it may be, out of our own fund and in no way, shape, or form shall we add the costs of the increase to the financial report upon which the State bases its reimbursement." *Id.* Furthermore, the statement of approval issued by the Public Health Council wherein NCYI was approved to become the operator of plaintiff clearly states that:

Public Health Council approval is not to be construed as approval of property costs or the lease submitted in support of the application. Such approval is not to be construed as an assurance or recommendation that property costs or lease amounts as specified in the application will be reimbursable under third party payor reimbursement guidelines.

to the way its capital cost re-imbursement was calculated for 1971. According to plaintiff, defendants used the ceiling rate designated for 1970 to calculate its 1971 reimbursement. The 1971 rate was lower than the 1970 rate and thus plaintiff was deprived of its full allowance.

Second, plaintiff objects to having its capital cost reimbursement figured in accordance with NYCRR §§ 86–2.19(e) and 2.21(c).[7] According to plaintiff, it assumed a *bona fide*, valid, long-term lease in 1976, assuming that it would continue to be reimbursed for actual lease payments. Plaintiff argues that had it known that defendants would enact NYCRR § 86–2.19(e) in 1977, it would not have entered the lease in 1976.

Plaintiff alleges four claims in its proposed amended complaint: 1) the ceilings applied by defendants are in violation of federal and state law, and the state plan; 2) defendants utilized the ceilings in violation of the New York State Administrative Procedure Act, Article 2, and the New York State Executive Law § 102 and Article 6–A; 3) defendants have applied the ceiling to plaintiff incorrectly and in a different manner than all other facilities in the medicaid program; and 4) defendants have treated similarly situated RHCFs differently in violation of the equal protection clause of the United States Constitution, the equal protection clause of the New York State Constitution, and the federal and New York State medicaid laws and regulations.

## II.

Leave to amend "shall be freely given when justice so requires." Rule 15(a), F.R.Civ.P. *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). In this case, amendment is not sought for any improper purpose and no prejudice will result to defendants. Therefore, leave to amend is properly granted, and the court shall consider plaintiff's complaint as amended in making its determination on defendants' cross-motions.

## III.

Defendants have filed a motion to dismiss and a motion for summary judgment directed to plaintiff's amended complaint. The court begins by noting that although plaintiff has styled its complaint as one for declaratory and injunctive relief, plaintiff, in its addendum clause, has asked the court to direct defendants to correct plaintiff's reimbursement rates for past periods. Plaintiff's language cannot disguise its request for damages to be paid from the state treasury, a request which is barred by the Eleventh Amendment. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Plaintiff's invoking 42 U.S.C. § 1983 is of no help as § 1983 does not represent an exception to a state's Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Furthermore, although Plaintiff has named Westchester County and the City of New York in its complaint, it has not alleged any violation of law or any vicarious liability on their part, and therefore the complaint must be construed as being only against New York State.

Essentially, plaintiff's claims break down into three categories: alleged violations of federal medicaid law, alleged violations of New York State law and the New York State Constitution equal protection clause, and alleged violations of the equal protection clause of the federal Constitution.

## A.

Plaintiff claims that defendants' establishment of a ceiling, as provided under the New York State medicaid regulations, to limit plaintiff's real property reimbursement rate violates the federal medicaid statute, 42 U.S.C. § 1396a(a)(13)(A), which requires "that the state plan reimburse medicaid providers according to rates that are reasonable and adequate to meet the costs which must be incurred by efficiently

---

**7.** Plaintiff filed appeals requesting review of its rates of reimbursement for capital costs for the periods between January 1, 1978, and December 31, 1984, with the Department of Health. The appeals were denied, as were subsequent requests for an evidentiary hearing.

and economically operated facilities...." Based on this statute, plaintiff argues that it should be reimbursed for its actual rental payments.

Plaintiff's argument is without merit. Under the efficient cost standard, the defendants are clearly not required to reimburse plaintiff for the costs it actually incurs, or even for the costs it reasonably incurs. *Friedman v. Perales*, 668 F.Supp. 216, 222–223 (S.D.N.Y.1987) (Ward, J.), *aff'd*, 841 F.2d 47 (2d Cir.1988) (*per curiam*). Rather, defendants are required to reimburse plaintiff for the costs that would be reasonably incurred by an economically and efficiently run facility. *Id.* at 222. In determining these amounts, "states are free to formulate class-wide reimbursement regulations based on the costs of rational groupings of provider facilities." *Id.*

Additionally, there is no requirement that defendants provide plaintiff with "reasonable and adequate" reimbursement for each individual expense. Rather, the requirement is that plaintiff's reimbursement be "reasonable and adequate" in total. "The efficient cost standard of the medicaid provisions requires only that RHCFs be reimbursed for the efficient cost of their operations, not that every component of reimbursable cost be compensated at an efficient rate." *Friedman v. Perales, supra,* 841 F.2d at 48 (*quoting Friedman v. Perales, supra,* 668 F.Supp. at 225). Real property reimbursement is only one component of the total reimbursement that plaintiff receives, and it does not argue that in total it is being reimbursed in an amount less than would be reasonably incurred by an economically and efficiently run facility. Therefore, plaintiff has not stated a cause of action for violation of federal medicaid law.

## B.

In addition to its federal claims, plaintiff complains of three different wrongs under state law.[8] First, in count one of its complaint, plaintiff claims that it falls within the exception of NYCRR § 86–2.19(e) and therefore it is incorrect for defendants to calculate its real estate reimbursement under NYCRR § 86–2.21.[9] Second, in count two, plaintiff complains that defendant Axelrod adopted the ceilings in question in violation of Article 2 of the New York Administrative Procedure Act and Article 6–A of the Executive Law. Third, in count three,[10] plaintiff claims that its reimbursement rate was incorrectly determined under the current regulations in that the determination failed to account for the fact that it commenced its operation over a split year.[11] Finally, in count four, plaintiff alleges violation of the equal protection clause of the New York State Constitution.

It is unnecessary to consider plaintiff's state law claims in any greater

---

**8.** State regulations administering medicaid are clearly state law. "[T]here is no authority anywhere supporting the proposition that a state medicaid regulation becomes a federal law merely by virtue of its inclusion in a state plan required by federal law." *Oberlander v. Perales,* 740 F.2d 116, 119 (2d Cir.1984).

**9.** Plaintiff's assertion that NYCRR § 86–2.19(e) is inapplicable to it is incorrect. Based on Wolf's membership on plaintiff's board of directors and the fact that plaintiff assumed its facility lease from Wolf, it claims that it fits into the NYCRR § 86–2.19(e) exception which provides that NYCRR § 86–2.21(c) is not invoked when the proprietary interest from which the facility is leased has "representation on the board of directors of the voluntary [RHCF]." Plaintiff does not fall within this exception because it does not lease its premises from Wolf; rather, it *assumed* Wolf's lease.

**10.** Defendants have moved to dismiss the third count of plaintiff's complaint, arguing that it is vague, conclusory and insufficient to state a claim. Keeping in mind that under the federal rules pleadings are to be liberally construed and not dismissed unless it appears that a plaintiff has no basis for a claim, 5 C. Wright & A. Miller, Federal Practice and Procedure § 1202 (1969), the third count of plaintiff's complaint passes muster. Although perhaps not a model of clarity, it gives defendants sufficient notice of the claim being brought against them.

**11.** Plaintiff has not alleged in its complaint that it has exhausted, or even pursued, an administrative remedy for this alleged miscalculation. This alone would be sufficient grounds to dismiss this claim. *See, e.g., McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969).

detail as the Eleventh Amendment dictates their dismissal. Under the Eleventh Amendment, federal courts are prohibited from entertaining injunctive claims against state officials based on state law, even if such claims are brought under the basis of pendent jurisdiction. *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Even if it was not the case that the court was prohibited by the Eleventh Amendment from entertaining plaintiff's state law claims, the court would exercise its discretion inherent in pendent jurisdiction and decline to do so. *See Friedman v. Perales,* 616 F.Supp. 1363, 1367–68 (S.D.N.Y.1985) (Gagliardi, J.).

### C.

Plaintiff claims that defendants violated its rights under the equal protection clause of the United States Constitution in that it treats different RHCFs differently under the same circumstances with regard to their real property costs. Specifically, plaintiff alleges that defendants reimburse all other voluntary not-for-profit RHCFs for their real property costs without subjecting them to any ceiling, whereas plaintiff, also a not-for-profit RHCF, is subject to a ceiling.

Because no suspect class or fundamental interest is at stake, the regulations in question will be upheld if a rational basis exists for their adoption. "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. When social or economic legislation is at issue, the equal protection clause allows the States wide latitude, and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes." *City of Cleburne, Tex. v. Cleburne Living Center,* 473 U.S. 432, 440,

105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) (citations omitted).

Defendants have moved for summary judgment on this issue, contending that the regulations have a rational basis. Rule 56(c), F.R.Civ.P., provides for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis original). A material fact is one "that might affect the outcome of the suit under the governing law." *Id.* Plaintiff and defendants have no dispute as to material facts, and, therefore, to defeat plaintiff's equal protection claim defendants must do no more than articulate a rational reason for the distinction about which plaintiff complains.

Under the regulations, a distinction is drawn between voluntary facilities which own the physical plant in which they operate and voluntary facilities which lease such space from for-profit concerns, the class into which plaintiff falls. Voluntary facilities which own their own space are reimbursed on a historical cost basis.[12] Voluntary facilities which lease space from for-profit concerns are reimbursed for their actual lease payments up to a specified ceiling, provided they operate pursuant to a *bona fide,* valid, non-cancellable lease executed before March 10, 1975. NYCRR § 86–2.19(e).[13] Voluntary facilities which

12. Plaintiff's argument that voluntary RHCFs reimbursed under the historical cost method receive all their property costs ignores the fact that such costs are subject to approval and those determined to be unnecessary or excessive are disallowed for reimbursement purposes. *See* NYCRR § 86–2.19(a). It should also be noted

that these facilities are required to fund depreciation. NYCRR § 86–2.19(b).

13. Plaintiff also argues that it is differently situated from other voluntary RHCFs located in space leased from a proprietary interest pursuant to a *bona fide,* valid, non-cancelable lease entered into and approved prior to March 10,

lease from proprietary concerns under a lease which does not meet the above criteria are reimbursed for capital costs based on the historic costs to the landlord.

According to defendants, the NYCRR § 86–2.19(e) distinction was enacted to benefit voluntary facilities leasing from proprietary interests who were locked into long-term leases. Lease reimbursement almost inevitably results in higher reimbursement than historic cost reimbursement because lease reimbursement includes reimbursement for landlord profit. Put another way, assuming a landlord rents a facility for more than the total straight-line depreciation of the building, fixed equipment, and capital improvements, lease reimbursement will provide the RHCF with a larger reimbursement. Certainly it is rational for defendants to reimburse certain RHCFs operating under fixed capital costs for their actual costs, while limiting the amount of reimbursement to other RHCFs not operating under fixed capital cost constraints.

It is, of course, possible that a landlord might rent a facility for less than his total depreciation and therefore lease reimbursement would provide less funds than historic reimbursement. But, if this was the case, all plaintiff would have to do is to request to be reimbursed based on the historic cost reimbursement method. Aff. W. Gormley, ¶ 6. However, even if this option was not available, plaintiff would not be deprived of equal protection. "Rational distinctions may be made with substantially less than mathematical exactitude," *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976), and rationality is not impaired because a distinction is either over-inclusive or under-inclusive. *Dandridge v. Williams*, 397 U.S. 471, 486, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970); *Williamson v. Lee Optical*, 348

U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955).

### IV.

The essence of this case is that plaintiff is a party to an improvident business deal made with the proprietary concern from whom plaintiff leases its facility. While this is certainly lamentable in that plaintiff is a charitable organization which voluntarily operates a needed public service, plaintiff has not advanced any grounds upon which the court can award relief.[14] Accordingly, although plaintiff's motion to file an amended complaint is granted, defendants' motion to dismiss as to claims one, two, and three, and motion for summary judgment as to claim four are granted.

IT IS SO ORDERED.

1975, in that plaintiff assumed its lease before the enactment of NYCRR § 86–2.19(e) whereas the other RHCFs assumed their leases after the enactment of NYCRR § 86–2.19(e) and thus knew that their reimbursement would be figured in accordance with NYCRR § 86–2.21(c). This argument is without merit. Plaintiff knew at the time it assumed the lease that there was a

ceiling on reimbursement and that it would not increase. *See, infra,* n. 6.

14. The court, of course, expresses no opinion as to whether plaintiff has a claim for violation of the state regulations which would be properly cognizable in state court.