RYE PSYCHIATRIC HOSPITAL CENTER, INC., Plaintiff,

v.

Richard C. SURLES, PhD., Commissioner of the Office of Mental Health of the State of New York, and Cesar A. Perales, Commissioner of the State of New York Department of Social Services, Defendants.

No. 88 Civ. 5922 (GLG).

United States District Court, S.D. New York.

Nov. 7, 1991.

Shanley & Fisher (Frederick A. Nicoll, of counsel), New York City, for plaintiff.

Robert Abrams, Atty. Gen. of State of N.Y. by Brian T. McGovern, Asst. Atty. Gen., New York City, for defendants.

## OPINION

GOETTEL, District Judge.

Plaintiff Rye Psychiatric Hospital Center ("Rye Psychiatric") originally commenced this action against defendants Richard C. Surles and Cesar A. Perales to challenge New York's Medicaid reimbursement system as applied to private psychiatric hospitals as violative of the Boren Amendment to the Medicaid Act. Plaintiff presently seeks injunctive relief from this court directing defendants to commence specific actions designed to implement the court's prior decision which rendered the minimum utilization adjustment to New York's Medicaid reimbursement rates null and void.

## I. FACTUAL BACKGROUND

The facts of this case were fully detailed in this court's prior opinion of July 2, 1991. While it is unnecessary to repeat the court's explanation of the Medicaid system and the enactment of the Boren Amendment, we must provide an overview of the background and subsequent procedural history of the case to allow for a full understanding of the context and disposition of plaintiff's motion.

Rye Psychiatric, a private psychiatric hospital located in New York, originally brought this action under 42 U.S.C. § 1983 (1988) against the respective department heads of the Office of Mental Health of the State of New York and the State of New York Department of Social Services. Plaintiff challenged New York's state plan for Medicaid as insufficient under the Boren Amendment to the Social Security Act and its corresponding federal regulations.[1] To promote increased rate-setting flexibility and efficiency for states, the Boren Amendment's implementing regulations require states to make at least annual findings that its reimbursement rates are reasonable and adequate. *See Pinnacle*

*Nursing Home v. Axelrod,* 928 F.2d 1306, 1310 (2nd Cir.1991).

Specifically, plaintiff claimed that the state's method of calculating Medicaid reimbursement rates which included a minimum utilization adjustment violated the procedural requirements of the Boren Amendment as well as the equal protection and due process clauses of the United States Constitution. Additionally, plaintiff claimed that New York's reimbursement rates did not meet the Boren Amendment's substantive requirements. Although state participation is optional, once a state elects to take part in the Medicaid program it must comply with federal statutory requirements. *See Harris v. McRae,* 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980). On July 2, 1991, this court declared the minimum utilization adjustment included in New York's reimbursement formula for private psychiatric hospitals as codified at 14 N.Y.C.R.R. § 577.7(g) to be null and void since state officials failed to conduct any formal findings as required by the Boren Amendment to support the rate adjustments. *See Rye Psychiatric Hosp. Center, Inc. v. Surles,* 768 F.Supp. 82 (S.D.N.Y.1991). The court declined to resolve any of plaintiff's substantive claims under the Boren Amendment regarding New York's Medicaid reimbursement rate schedule until the procedural violations were cured by the state. *See id.* at 89.

Plaintiff presently contends that defendants, despite this court's holding the minimum utilization adjustment to be null and void, continue to use it in calculating Rye Psychiatric's current Medicaid reimbursement rates and have failed to revise the provisional rates of prior fiscal years to exclude the voided adjustment. In short, plaintiff states that the defendants have done nothing to implement the court's prior decision. Plaintiff further notes that it remains in a precarious financial position because of the insufficient reimbursements it has been receiving from the state.

---

**1.** The Boren Amendment is codified at 42 U.S.C. § 1396a(a)(13)(A) and states in part that, "[a] State plan for medical assistance must provide for payment ... of the hospital services ... provided under the plan through the use of

rates ... which the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities."

Plaintiff has submitted this order to show cause seeking a court order compelling defendants to commence reimbursing Rye Psychiatric at its 1990 Medicaid rate absent the minimum utilization adjustment—*i.e.* a rate of $423.18 per patient per day—and to complete within ninety days a final audit of its rates between January 1, 1987 and July 2, 1991 (the date of this court's prior decision on the minimum utilization adjustment). Furthermore, plaintiff requests the court to order defendants to pay them the difference between reimbursement rates calculated without factoring in the minimum utilization adjustment and the rates actually received by plaintiff during this period. Plaintiff also asks the court to compel defendants to increase its reimbursement rates an additional five percent to reflect its proper status as a disproportionate share hospital under 42 U.S.C. § 1396r–4(b) of the Boren Amendment. By separate motion plaintiff requests attorney's fees from defendants.

On October 3, 1991, plaintiff received from New York's Office of Mental Health ("OMH") the Proposed 1991 Medicaid Rates for private psychiatric hospitals. The estimated rates chart specifies Rye Psychiatric's 1990 Medicaid reimbursement rate as $432.18 and its proposed 1991 rate as $448.80. Plaintiff calls attention to a notation below the chart which states that the 1989 Capital Costs figures reflect some preliminary audit adjustments.

According to defendants, plaintiff's reimbursement rate has been revised from July 2, 1991 through the present to exclude the improperly adopted minimum utilization adjustment. Defendants also state that revised reimbursement payments to plaintiff have already commenced effective July 2, 1991. Plaintiff, in its amended Article 78 petition, admits that OMH has made Medicaid reimbursement payments without the minimum utilization factor as of July 2, 1991.

## II. DISCUSSION

The principal issue raised by defendants in opposition to plaintiff's motion for injunctive relief is the immunity afforded to states under the eleventh amendment. Before the court can grant plaintiff's motion and issue the requested relief it must satisfy itself that the types of relief at issue do not run afoul of the eleventh amendment's restrictions on the power of federal courts to grant relief against a state.

The eleventh amendment to the Constitution of the United States provides that:

"The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

U.S. CONST. amend. XI. Generally, this provision is viewed as an explicit limitation to the subject matter jurisdiction of the federal courts. *See Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 467, 65 S.Ct. 347, 352, 89 L.Ed. 389 (1945). While the amendment's language expressly confines its application to the diversity jurisdiction of federal courts to hear suits against states by citizens of other states or foreign nations, the Supreme Court has extended its meaning to also preclude suits in federal court against a state by its own citizens. *See Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

■ Although the evolution of eleventh amendment doctrine has often been marked by inconsistency and, to many, disarray, some basic principles may be gleaned from the caselaw. The eleventh amendment not only protects states from suit but may also shield state officials with immunity. "[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suits even though individual officials are nominal defendants." *Ford Motor Co.*, 323 U.S., at 464, 65 S.Ct., at 350.

■ The central elements in the application of eleventh amendment immunity to state officials are the timing of the injury and the nature of the relief sought. The Supreme Court has carved out an exception to eleventh amendment immunity for awards of prospective injunctive relief.

*See Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The dividing line between permissible relief and relief proscribed by the eleventh amendment was clarified by the Court in *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), when it distinguished between retroactive and prospective relief. Simply put, the eleventh amendment bars the award of retroactive relief for violations of federal law which would require the payment of funds from a state treasury. *See Edelman v. Jordan,* 415 U.S. 651, 677, 94 S.Ct. 1347, 1362, 39 L.Ed.2d 662 (1974). Federal courts possess the power to award an injunction governing a state official's future conduct. However, the amendment's immunity is triggered when relief amounts to the payment of state funds as a form of compensation for past breaches of legal duties by state officials. *See id.* at 668, 94 S.Ct. at 1358; *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 102–03, 104 S.Ct. 900, 909, 79 L.Ed.2d 67 (1984) (*Pennhurst II*). Any court that has faced this issue realizes that walking this retroactive/prospective line is no simple feat.

■ How a court formally labels its relief is immaterial; what matters is the nature of the relief. If the relief "will to a virtual certainty be paid from state funds and not from the pockets of the individual state officials who were the defendants in the action," it is barred by the eleventh amendment. *Edelman v. Jordan,* 415 U.S., at 668, 94 S.Ct., at 1358. The concern animating the retroactive/prospective distinction is the balance between the competing interests of the supremacy clause and principles of federalism. Permitting courts to ensure state compliance with federal laws when framed as prospective relief and barring such relief when applied retroactively enables the federal courts to vindicate federal rights without emasculating completely states' eleventh amendment immunity. *See Pennhurst II,* 465 U.S., at 105, 104 S.Ct., at 910. When the foundational violations involve state law this reasoning disappears because the federal interests in a robust supremacy clause are

absent. Therefore, when the relief requested against state officials, whether retroactive or prospective, is based upon violations of state law, federal courts lack jurisdiction to grant relief altogether. *See id.* at 106, 104 S.Ct. at 911.

■ Two additional exceptions to eleventh amendment immunity have blurred the retroactive/prospective inquiry. First, if the actions by state officials are deemed a continuing violation of federal law the federal courts may grant relief that requires expenditures from state treasuries. "Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law." *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985) (citing *Milliken v. Bradley,* 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977)).

The scope of the continuing violations exception, however, has been narrowed through its application. In remedying continuing violations courts have paid close attention to the nature of the programs challenged. Cases in which courts have found continuing violations have often involved remedies like the school desegregation plans challenged in *Milliken* that "were not, and as a practical matter could not be, intended to wipe the slate clean by one bold stroke, as could a retroactive award of money." *Milliken v. Bradley,* 433 U.S. 267, 290, 97 S.Ct. 2749, 2762, 53 L.Ed.2d 745 (1977); *see also U.S. v. Yonkers Bd. of Educ.,* 893 F.2d 498, 503 (2nd Cir.1990) (involving school desegregation); *Clark v. Cohen,* 794 F.2d 79 (3rd Cir.1986), *cert. denied,* 479 U.S. 962, 107 S.Ct. 459, 93 L.Ed.2d 404 (1986) (involving rehabilitative training of a person confined to a state institution for the mentally disabled).

■ The second exception to eleventh amendment immunity states that federal courts possess the power to grant relief even when it will result in the payment of funds from a state treasury if it is ancillary to proper prospective relief. *See, e.g., Milliken,* 433 U.S., at 289, 97 S.Ct., at 2761; *Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979);

*Hutto v. Finney,* 437 U.S. 678, 690–91, 98 S.Ct. 2565, 2573, 57 L.Ed.2d 522 (1978).

Turning to the case before us, plaintiff attempts to characterize its requested relief as prospective in nature and thus unaffected by the eleventh amendment. Specifically, Rye Psychiatric terms as prospective both its requests relating to current Medicaid reimbursements and its request for the difference in rates between what was paid as reimbursements from 1987 through July 2, 1991 and what should have been paid absent the improperly adopted minimum utilization adjustment.

█ These two injunctive requests stand on very different footing for purposes of the eleventh amendment. As already stated, the eleventh amendment prohibits awarding retroactive relief for past injuries if the relief requires expenditures from a state treasury. In determining on which side of the prospective/retroactive line relief falls, courts in practice focus upon when the injuries occurred from which the requested relief arises. *See, e.g., Port Chester Nursing Home v. Axelrod,* 732 F.Supp. 440, 444 (S.D.N.Y.1990); *Friedman v. Perales,* 616 F.Supp. 1363, 1369 (S.D.N.Y.1985); *see also West Virginia Univ. Hospitals, Inc. v. Casey,* 701 F.Supp. 496, 523 (M.D.Pa.1988), *aff'd in part and rev'd in part,* 885 F.2d 11 (3rd Cir.1989) (reversed on other grounds); *Hillhaven Corp. v. Wisconsin Dept. of Health,* 634 F.Supp. 1313, 1325 (E.D.Wis. 1986). If they are past harms, any proposed relief must be deemed retroactive; if they are considered present harms, a remedy can be provided in the future.

█ Here, the injuries involved took place when plaintiff was reimbursed according to rates legally improper under the Boren Amendment. The portion of plaintiff's action relating to inadequate reimbursement payments and improper rate methodologies occurring since July 2, 1991, the date on which this court held the minimum utilization adjustment null and void, represents injuries arising after the court

issued its decision. Relief for these injuries is clearly prospective in nature.[2] However, redressing plaintiff's claims of inadequate Medicaid reimbursements paid prior to the court's earlier decision—*i.e.* compelling defendants to pay plaintiff the difference in rates absent the minimum utilization adjustment from January 1, 1987 through July 2, 1991—smacks of a retroactive award. These injuries occurred prior to the court's decision. In essence, plaintiff is asking for "the payment of a very substantial amount of money which [it argues] should have been paid, but was not." *Edelman v. Jordan,* 415 U.S., at 664, 94 S.Ct., at 1356. Granting such relief would have a retroactive effect and is thus be barred by the eleventh amendment.

Courts have repeatedly faced suits by Medicaid providers challenging the legal adequacy of reimbursement rates and, in examining the injuries in relation to the retroactive/prospective distinction, have reached like conclusions. *See, e.g., Yorktown Medical Laboratory, Inc. v. Perales,* 948 F.2d 84, 88 (2nd Cir.1991); *Tekkno Laboratories, Inc. v. Perales,* 933 F.2d 1093, 1098 (2nd Cir.1991); *N.Y. State Ass'n for Retarded Children v. Carey,* 727 F.2d 240, 243 (2nd Cir.1984); *Port Chester Nursing Home v. Axelrod,* 732 F.Supp. 440, 444 (S.D.N.Y.1990); *Friedman v. Perales,* 616 F.Supp. 1363, 1368 (S.D.N.Y.1985); *see also Kansas Health Care Ass'n v. Kansas Dept. of Social and Rehabilitation Services,* 754 F.Supp. 1502, 1517, n. 4; *Temple University v. White,* 729 F.Supp. 1093, 1100–01 (E.D.Pa.1990), *aff'd,* 941 F.2d 201 (3rd Cir.1991). Recently, the Second Circuit noted that Congress demonstrated its intention to bar provider suits against states for past compensation by its repeal of an amendment to the Medicaid Act penalizing states that failed to waive their eleventh amendment immunity to damage suits by Medicaid providers. *See Yorktown Medical Laboratory, Inc. v. Perales,* 948 F.2d 84, 88 (2nd Cir.1991).

---

**2.** This issue may in fact be moot since defendants claim that Rye Psychiatric's Medicaid reimbursement level has been revised since July

2, 1991 and payments at the revised rate have commenced effective July 2, 1991.

Plaintiff, however, argues that under New York law Medicaid rates are only "provisional pending the completion of an audit." 14 N.Y.C.R.R. § 577.7(d). Since no audit of Rye Psychiatric's reimbursement rates has been completed since 1986, plaintiff contends that its Medicaid reimbursements from January 1, 1987 through July 2, 1991 represent a present, continuing injury until the rates are made "final" by an audit. Therefore, argues plaintiff, the court should not regard these additional reimbursements as retroactive compensation for past injuries but as prospective relief for a continuing violation of the Boren Amendment and its implementing regulations. Further, as a necessary step toward receiving its reimbursement request, plaintiff asks the court to order defendants to complete these audits without the minimum utilization factor within ninety days.

In response, defendants argue that plaintiff is merely using the state's audit provisions to end run around the restrictions of the eleventh amendment. By stressing the labelling of the past reimbursement rates as "provisional," plaintiff is attempting to indirectly circumvent the eleventh amendment's bar to retroactive monetary relief. Moreover, say defendants, the required audits derive from a duty imposed by state law and thus any remedies predicated on them fall outside the limits of federal court jurisdiction according to *Pennhurst II*, 465 U.S. 89, 104 S.Ct. 900. In addition, defendants contend that none of the applicable New York statutes or regulations require audits. Rather, rates are made final either by completion of an audit or the expiration of the six-year audit period.[3] Therefore, defendants are not required to positively act in order to finalize reimbursement rates.

Plaintiff responds in two ways. First, interpreting this provision as New York suggests would allow the state to grossly underpay its Medicaid providers and force them to wait upwards of six years until rates are finalized by the running of the audit period before the reimbursements can be challenged in an Article 78 proceeding. If the eleventh amendment subsequently bars any actions to recover the underpayment, it contends that the only way Medicaid providers could challenge the reimbursement rates of a given fiscal year *in federal court* while avoiding the strictures of the eleventh amendment would be if they bring a federal action the day after they receive their first underpayment.

Secondly, plaintiff argues that audits are mandated by federal law as well and thus *Pennhurst II*'s bar to relief for state law violations is inapplicable. Plaintiff notes that the Boren Amendment provides that a state plan must "provide that the records of any entity participating in the plan and providing services reimbursable on a cost-related basis will be audited as the Secretary determines to be necessary to insure that proper payments are made under the plan." 42 U.S.C. § 1396a(a)(42). Further, federal regulations require that a state Medicaid agency "must provide for periodic audits of the financial and statistical records of participating providers." 42 C.F.R. § 447.253(e).

Rye Psychiatric argues that five years without an audit of its cost reports violates these federal requirements. The content and frequency of the audits required by these regulations appear ambiguous to the court. For example, it is unclear whether "periodic" means auditing every provider, every year or something less comprehensive and less frequent.

The court, however, need not resolve this ambiguity because we are constrained to agree with defendants' primary argument. Semantic games may not be used by either courts or parties to avoid the eleventh amendment's restrictions. It is not formal denominations that matter but rather the true nature of the relief requested.

---

**3.** In the New York Code of Rules and Regulations promulgated by the Commissioner of the State Office of Mental Health, 14 N.Y.C.R.R. § 577.7 states that "payment rates established under this section shall be provisional pending completion of an audit in accordance with section 577.6 of this Part." § 577.6 provides for a six year period during which psychiatric hospitals are subject audit by the state. After the six year period has expired, a facility may dispose of the underlying records for a given year's reimbursement rate.

Whether or not state law labels reimbursement rates as "provisional," compelling defendants to pay plaintiff the difference in reimbursements between the rates actually used and the rates that should have been applied without the enjoined minimum utilization adjustment would clearly require a significant amount of money to be paid out of New York's treasury. This is precisely the sort of retroactive monetary relief barred by the eleventh amendment. *See Edelman v. Jordan,* 415 U.S., at 677, 94 S.Ct., at 1362.

Neither does this case fall within the continuing violations exception to eleventh amendment immunity. The facts in this case parallel many aspects of those in *West Virginia Univ. Hospitals, Inc. v. Casey,* 701 F.Supp. 496 (M.D.Pa.1988), *aff'd in part and rev'd in part,* 885 F.2d 11 (3rd Cir.1989).[4] In that case, plaintiffs alleged that the state's Medicaid reimbursement system violated the Boren Amendment, its implementing regulations, and the equal protection clause of the Constitution. Plaintiffs sought declaratory and injunctive relief asking the court to order the creation of an appeals system and the right to appeal its Medicaid reimbursements for earlier fiscal years. Significantly for this case, in refusing to find a continuing violations of federal law, the court reasoned that:

> "[T]he only continuing harm is the unrecovered loss of money. While the court is not insensitive to [plaintiff's] sizeable monetary loss, the court cannot order relief which will almost certainly result in the recovery of money for the sole purpose of recovering money. The court cannot order the plaintiff to be made whole if it is money only which it needs to be made so ... [T]he violations in the

case at bar are 'discrete for each year.' There is a continuing effect on the Hospital caused by its having been denied money it was entitled to, but the nature of that harm is not such that it will affect the future of the institution in a fundamental way. The court recognizes that [plaintiff] cannot continue to sustain the level of losses it has been sustaining and still be certain of providing the services it does presently. However, there is nothing in the record which inform the court that recovery of the alleged 2.3 million dollars owed it for the fiscal years 1984 and 1985 are crucial to the Hospital's future viability."

*Id.* at 525 (citations omitted). Money also lies at the heart of plaintiff's desired relief in this case. Unlike the continuing violations in *Milliken,* improper reimbursements claimed by plaintiff are exactly the sort of violations that can be wiped clean by one broad stroke of monetary relief. *See Milliken,* 433 U.S., at 290, 97 S.Ct., at 2762. Rye Psychiatric, careful to phrase its relief request in prospective terms, wishes the court to order defendants to pay them the reimbursements it should have received but for the presence of the enjoined minimum utilization adjustment in the rate-setting formula. The fact that the monetary amounts in question may be substantial only highlights our belief that the eleventh amendment is designed to guard against exactly such major impacts on state treasuries.

The court notes both the severe financial problems that private psychiatric hospitals face these days and the growing number of federal court judgments resulting in increased federal and state Medicaid spending to the tune of billions of dollars.[5] Ac-

---

**4.** The Third Circuit in *West Virginia Univ. Hosp. v. Casey,* 885 F.2d 11 (3rd Cir.1989), reversed the district court's decision to order the state to revise its appeal system and apply it to the provider's reimbursement claims. While not reaching the eleventh amendment issue, the court expressed its belief that the district court's order would raise serious eleventh amendment concerns due to its retroactive character. The circuit court's reservation only reinforces our position that orders which are likely to result in retroactive award of money against a state, even if they simply revise procedures used in the

past, are suspect under the eleventh amendment.

**5.** Two recent articles in The New York Times have reported on the multitude of problems vexing private psychiatric hospitals and the Medicaid system generally. Among the difficulties they face, the articles highlight the sharp drop in hospital occupancy rates, cuts in state funds for hospitalization, and the budgetary impact of federal court judgments invalidating state Medicaid reimbursement rates. *See* N.Y.

cording to plaintiff, it faces financial hardship stemming from defendants' failure to increase Rye Psychiatric's reimbursements to their correct level since the court's decision of July 2, 1991. *See* Plaintiff's Brief at 2. Defendants have represented to the court that present reimbursements are being made without use of the minimum utilization factor. On these facts, the court cannot say with certainty that Rye Psychiatric's very existence is fundamentally threatened.

Further, we need not decide this issue because dismissal of its claims for revised reimbursements for past years does not necessarily end plaintiff's efforts. In our earlier decision we noted that an action for damages in state court was stayed pending resolution of the federal court proceedings. *See Rye Psychiatric Hosp. Center, Inc. v. Surles*, 768 F.Supp., at 84 n. 5. As has often been noted, the eleventh amendment only applies to federal courts. *Nevada v. Hall*, 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979). Nothing inherent in our decision today prevents plaintiff from resuming its course in state court.

Additionally, federal law requires state Medicaid plans to "provide for procedures of prepayment and postpayment claims review, including review of appropriate data with respect to the ... provider of service." 42 U.S.C. § 1396a(a)(37)(B) (1988). We note that plaintiff, relying in part on our earlier decision, is presently pursuing its substantive challenges under the Boren Amendment to its past reimbursements in an Article 78 proceeding. N.Y.Civ.Prac. L. & R. 7801 *et seq.* (McKinney 1981).

Plaintiff's contention that accepting defendants' eleventh amendment position would allow the state to continue using the

voided minimum utilization adjustment until 1993 is flatly wrong. *See* Plaintiff's Reply Brief at 9. As we have already stated, defendants are prohibited from using the minimum utilization adjustment to set Medicaid reimbursement rates until the procedural violations of the Boren Amendment have been cured. This does not mean that plaintiff, as a consequence, is entitled to receive additional money from New York for reimbursements already paid during prior fiscal years.

█ Since the eleventh amendment prevents the court from ordering defendants to pay any reimbursement deficiencies stemming from prior fiscal years, we concurrently decline to order defendants to complete audits for these preceding fiscal years.[6] Other courts have ordered audits as ancillary relief for continuing violations of federal law. *See, e.g., Bennett v. White*, 865 F.2d 1395, 1407 (3rd Cir.1989), *cert. denied*, 492 U.S. 920, 109 S.Ct. 3247, 106 L.Ed.2d 593 (1989); *Temple University v. White*, 729 F.Supp., at 1101. In those cases, however, audits were deemed necessary so that an accounting could take place that would enable funds to be properly recaptured from the federal treasury.

The audits in this case are requested solely with an eye toward recovering money from a state treasury. The eleventh amendment guards against precisely such tactics designed to secure retroactive relief against a state. Given our holding that ordering additional payments for reimbursements already paid would constitute improper retroactive relief, the only practical result of granting plaintiff's audit request would be arming plaintiff with information it could use in its state court action for damages. However, this exercise of our discretion would not serve the federal

---

Times, Oct. 26, 1991, at L33, col. 3; N.Y. Times, Oct. 27, 1991, at A1, col. 1.

**6.** The court notes, however, that it would possess the authority to order defendants to complete audits in relation to Rye Psychiatric's reimbursement rates after July 2, 1991. The state uses cost reports from two years ago to calculate Rye Psychiatric's current reimbursement rates. Any relief granted concerning reimbursements made after our original decision would be prospective. Thus, ordering any audits nec-

essary to revise plaintiff's current post-decision reimbursement rates would be ancillary to the prospective relief and proper under the eleventh amendment. *See Quern v. Jordan*, 440 U.S., at 337, 99 S.Ct., at 1143; *Hutto v. Finney*, 437 U.S., at 690–91, 98 S.Ct., at 2573. Based upon defendants' contention that reimbursements made since July 2, 1991 have been at corrected rates, ordering such audits seems unnecessary at this point.

courts' interests in rendering decisions within its power to enforce. Given these circumstances, the balance between federal supremacy and federalism identified as the animating factor behind the eleventh amendment tilts toward protecting the federalism concerns by denying plaintiff's audit request.

While we expressly order defendants to comply fully with the applicable federal laws and this court's earlier decision, it would be overly intrusive for a federal court to order state officials to audit Rye Psychiatric's records for the purpose of correcting reimbursement rates for earlier years when the results can only be pursued in state court. This situation would be analogous to the court issuing a declaratory judgment that defendants violated federal laws in the past and compensation is due even though it lacked jurisdiction to order any corresponding relief. "[I]t would be an improper exercise of discretion for a federal court to grant [such relief] simply as a means of facilitating a plaintiff's claim for money damages in state court." *Friedman v. Perales*, 616 F.Supp., at 1369 (citing *New York Health and Hospitals Corp. v. Blum*, 708 F.2d 880, 885 n. 4 (2nd Cir.1983); *Hospital Ass'n of New York State, Inc. v. Toia*, 577 F.2d 790, 798 (2nd Cir.1978)).

Plaintiff, however, argues that despite the eleventh amendment's limitations this court should act to enforce its original decision invalidating the minimum utilization adjustment provision. According to plaintiff, defendants failure to complete any audits or revise its reimbursement rates represents bad faith in complying with our prior decision. The Supreme Court, as plaintiff notes, has justified the assessment of attorney's fees as sanctions against parties acting in bad faith. *See Chambers v.*

*NASCO, Inc.*, —— U.S. ——, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Hutto*, 437 U.S., at 689 n. 14, 98 S.Ct., at 2572. As the *Chambers* Court noted, in *Hutto* the Court specifically found bad faith on the part of the state in delaying its compliance with the district court's order of prospective relief. *See Chambers*, 111 S.Ct., at 2133-34; *see also Hutto*, 437 U.S., at 690-91, 98 S.Ct., at 2573. It thus ordered the state to pay attorney's fees as a type of remedial fine for what amounted to civil contempt. "That the award ha[s] a compensatory effect does not in any event distinguish it from a fine for civil contempt." *Hutto*, 437 U.S., at 691 n. 17, 98 S.Ct., at 2573-74.

■ Here, we do not find that defendants' actions rise to the level of sanctionable behavior. The prospective relief with which defendants must comply relates to the reimbursement rates set and payments made after July 2, 1991, the date of this court's original decision. Assuming what defendants say is true, they are now complying with the court's decision and no longer factoring the voided minimum utilization adjustment into plaintiff's reimbursement rates. It would be inappropriate for the court to exercise its inherent powers to impose bad faith sanctions on defendants at this point.[7] However, if defendants have not removed the voided adjustment from all reimbursements made after July 2, 1991, the court retains the inherent authority to effectively enforce its order. *See Chambers*, 111 S.Ct., at 2132.

■ The final issue raised by plaintiff's motion involves plaintiff's request that the court declare it a disproportionate share hospital under 42 U.S.C. § 1396r-4(b)(3) and order defendants to adjust Rye Psychiatric's reimbursement rate upward by five percent.[8] There is no doubt that as this

---

7. A separate issue may exist under the bad faith exception to eleventh amendment immunity as to whether ordering the state to complete audits for prior years and pay plaintiff any deficiencies in reimbursements already paid are the type of sanctions envisioned by the Court in *Hutto*. The court need not address this issue given our determination that no bad faith has yet been demonstrated in this case.

8. To resolve whether a hospital is deemed a disproportionate share hospital under 42 U.S.C. § 1396r-4(b) it must be determined whether a hospital's low-income utilization rate exceeds twenty-five percent. *See* 42 U.S.C. § 1396r-4(b)(1)(B). To make this calculation according to the statute's formula, a hospital's revenues, cash subsidies, and charges for patient services must be tallied. *See* 42 U.S.C. § 1396r-4(b)(3)(A), (B). If the hospital meets the twen-

relief relates to reimbursements paid after July 2, 1991, the relief is prospective in nature and falls outside the eleventh amendment's ambit.

Yet, in our earlier decision we stated that "the remaining challenges made by plaintiff need not be addressed until the state cures [its] procedural violations of the Boren Amendment." *Rye Psychiatric*, 768 F.Supp., at 89. Defendants argue that, since they have not yet completed the formal findings for the minimum utilization adjustment required to cure the Boren Amendment violation, the court should wait to resolve this issue. Plaintiff responds that the disproportionate share issue is unrelated to this procedural defect or its other substantive challenges to reimbursement rates under the Boren Amendment and therefore the issue is ripe for resolution.

We do not fully agree with plaintiff's position. The disproportionate share adjustment is not an entirely separate issue from the minimum utilization adjustment we nullified in our earlier decision. To calculate a hospital's low-income utilization rate, the revenues paid to the hospital for patient services under the state Medicaid plan are factored into the formula. *See* 42 U.S.C. § 1396r–4(b)(3)(A). As plaintiff notes in its brief, the minimum utilization factor impacts the calculation of the revenues a hospital receives under a state plan for a given fiscal year. Hence, the two factors appear closely interrelated.

However, we previously held New York's minimum utilization adjustment to be null and void. By definition, this means that until New York corrects its procedural violations of the Boren Amendment it is prohibited from using the minimum utilization adjustment as a factor in any of its Medicaid reimbursement rate calculations. To permit its continued use would effec-

tively sap our holding of any meaning. Therefore, as New York must recalculate its reimbursement rates absent the voided adjustment from July 2, 1991 forward (as defendants claim they have already done) so too it should redetermine Rye Psychiatric's proper status as a disproportionate share hospital after July 2, 1991.

The reasoning underlying defendants' argument that Rye Psychiatric is ineligible for disproportionate share status under the terms of 42 U.S.C. § 1396r–4(b) only bolsters our conclusion. Defendants argue that Rye Psychiatric's low-income utilization rate, like its current reimbursement rates, is based upon cost data from two years ago. According to defendants, using the figures from that year, plaintiff does not meet the disproportionate share threshold. Unless defendants have already recalculated them, these figures still reflect calculations using the voided minimum utilization adjustment. Therefore, defendants argument is premised on the continued use of the minimum utilization adjustment that we have held may not be used until the state completes formal findings.

In response, defendants argue that they need not redetermine Rye Psychiatric's status as a disproportionate share hospital because the United States Department of Health and Human Services ("HHS") has granted New York an exemption from the disproportionate share requirement pursuant to subsection 42 U.S.C. § 1396r–4(e).[9] Referring to HHS's letter to defendants which explained that "this special rule should be applied on a statewide basis including psychiatric and specialty hospitals," plaintiff contends that New York does not qualify for a disproportionate share exemption under 42 U.S.C. § 1396r–4(e). Under its state Medicaid plan, New York is not applying the exemption in the manner required by the statute—*i.e.* on a statewide basis involving the majority of

ty-five percent threshold, it is entitled to an upward adjustment equal to five percent of the total Medicaid reimbursement due to the hospital in that year. *See* 42 U.S.C. §§ 1395ww(d)(5)(F)(iv)(II), 1396r–4(c).

**9.** 42 U.S.C. § 1396r–4(e) states that a state plan is exempt from the disproportionate share re-

quirement if, among other things, the plan "provide[s] for payment adjustments based on a pooling arrangement involving a majority of the hospitals participating under the plan for disproportionate share hospitals as of January 1, 1984."

**1153**

disproportionate share hospitals. Therefore, plaintiff argues, New York must re-evaluate its assessment and increase its reimbursement rate to reflect Rye Psychiatric's proper status as a disproportionate share hospital.

On the present record, the court is unable to establish whether New York does indeed qualify for an exemption under 42 U.S.C. § 1396r–4(e). Whether the exemption is applied by New York on a statewide basis and whether New York's state plan provides for payments based upon any pooling arrangements are questions both material to our resolution and presently unanswerable. Therefore, unless it is shown through a recalculation of the low-income utilization figures that Rye Psychiatric does not properly meet the disproportionate share threshold, an evidentiary hearing is required to determine whether New York is exempted from the Boren Amendment's disproportionate share requirement.

### III. CONCLUSION

To conclude, for the reasons stated above, the court denies plaintiff's motion for injunctive relief to the extent it is prohibited by the eleventh amendment. In addition, we conclude that a limited evidentiary hearing may be necessary to resolve the issue of New York's exemption from the disproportionate share requirement. We shall address plaintiff's motion for attorneys fees in a separate decision.

SO ORDERED.